## No. 24-5936

# In the United States Court of Appeals

### FOR THE NINTH CIRCUIT

SARAH ANOKE; CATHERINE BONN; ISABELLE CANNELL;
SAMANTHA FESTEJO; DAWN HOISE; WAYNE KRUG; LAURENT
LUCE; PATRICK O'CONNELL; JENNIFER RYAN; JAIME SENA;
JAMES SHOBE; KARYN THOMPSON; CRISTIAN ZAPATA;
MELANIE EUSEBIO; CARLOS MOISES ORTIZ GOMEZ,

*Plaintiffs-Appellees*,

v.

JACOB SILVERMAN,

*Intervenor-Appellee*,

TWITTER, INC.; X HOLDINGS CORP.; X CORP.;
X HOLDINGS I, INC.; ELON MUSK,

*Defendants-Appellants.*

On Appeal from the U.S. District Court for the Northern District of California
No. 3:23-cv-02217 (Hon. Susan Illston)

### BRIEF OF APPELLANTS

MICHAEL E. KENNEALLY
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

ERIC MECKLEY
BRIAN D. BERRY
MORGAN, LEWIS & BOCKIUS LLP
One Market Street, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

*Counsel for Defendants-Appellants*
*Twitter, Inc., X Holdings Corp., X Corp., X Holdings I, Inc., and Elon Musk*

## CORPORATE DISCLOSURE STATEMENT

X Corp., as successor in interest to Twitter, Inc., certifies that Twitter, Inc. has been merged into X Corp. and no longer exists. X Holdings Corp., as successor in interest to X Holdings I, Inc., certifies that X Holdings I Inc. has been merged into X Holdings Corp. and no longer exists. X Corp. is wholly owned by X Holdings Corp. X Holdings Corp. has no parent corporation, and no publicly held corporation owns 10% or more of X Holdings Corp.'s stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION.............................................................5

STATEMENT OF THE ISSUES...............................................................5

STATEMENT OF THE CASE..................................................................6

I.  Legal Background................................................................6

    A.  Federal Rules of Civil Procedure ........................................6

    B.  Local Rules of the Northern District of California ..............................7

II.  Factual and Procedural Background........................................8

    A.  The Company removed this proceeding from state court, and the Plaintiffs challenged the Company's corporate disclosure. ...........8

    B.  The district court granted the Company's motion to file the supplemental corporate disclosure statement under seal. ..................10

    C.  Jacob Silverman successfully moved to intervene and unseal the supplemental corporate disclosure statement...............................13

SUMMARY OF THE ARGUMENT ........................................................16

STANDARD OF REVIEW ...................................................................18

ARGUMENT .....................................................................................18

I.  The district court erred in ordering the Company to disclose X Holdings Corp.'s shareholders....................................................18

II.  The district court abused its discretion in granting the motion to unseal the supplemental corporate disclosure statement.............................28

    A.  The Company demonstrated good cause for maintaining the supplemental disclosure under seal.....................................................29

    B.  Intervenor does not have a First Amendment right of access to the supplemental disclosure. ...............................................37

III.  If the Court determines the case is moot, the district court's order should be vacated under the *Munsingwear* doctrine. ...................................39

**TABLE OF CONTENTS**
**(continued)**

Page

CONCLUSION ................................................................................41

STATEMENT OF RELATED CASES .................................................43

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ............................44

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*ABS Ent., Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) ...................................................................24

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*,
  24 F.4th 1249 (9th Cir. 2022) ..................................................................21

*All. for the Wild Rockies v. Savage*,
  897 F.3d 1025 (9th Cir. 2018) .................................................................40

*Anoke v. Twitter, Inc.*,
  105 Cal. App. 5th 153 (2024) ....................................................................1

*Arizonans for Off. Eng. v. Arizona*,
  520 U.S. 43 (1997)...................................................................................39

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ..............................................................5, 18

*Best Odds Corp. v. iBus Media Ltd.*,
  No. 14-cv-932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014) ...................8, 36, 39

*Bohannon v. Facebook, Inc.*,
  No. 12-cv-1894, 2019 WL 188671 (N.D. Cal. Jan. 14, 2019) ...........................38

*Charles O. Bradley Tr. v. Zenith Cap. LLC*,
  No. 04-cv-2239, 2006 WL 798991 (N.D. Cal. Mar. 24, 2006).........................35

*Cosgrove v. Nat'l Fire & Marine Ins. Co.*,
  770 F. App'x 793 (9th Cir. 2019).............................................................32

*Courthouse News Serv. v. Planet*,
  947 F.3d 581 (9th Cir. 2020) ..............................................................37, 38

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) ............................................................30, 31

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Doe #1 v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) .................................................................16, 41

*Doe v. Madison Sch. Dist. No. 321*,
    177 F.3d 789 (9th Cir. 1999) ..............................................................................41

*Donovan v. Vance*,
    70 F.4th 1167 (9th Cir. 2023) .............................................................................40

*EFT Holdings, Inc. v. CTX Virtual Techs., Inc.*,
    No. 15-cv-1597, 2016 WL 11519280 (C.D. Cal. Nov. 3, 2016)........................34

*FishDish, LLP v. Veroblue Farms USA, Inc.*,
    No. 19-cv-3026, 2019 WL 13328532 (N.D. Iowa July 26, 2019) ......................8

*Frazier v. Heebe*,
    482 U.S. 641 (1987)............................................................................................24

*Heinemann v. Satterberg*,
    731 F.3d 914 (9th Cir. 2013) ..............................................................................18

*Marshall v. Gates*,
    44 F.3d 722 (9th Cir. 1995) ................................................................................24

*Overstock.com, Inc. v. Goldman Sachs Grp., Inc.*,
    231 Cal. App. 4th 471 (2014) .............................................................................33

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ....................................................................*passim*

*Pintos v. Pac. Creditors Ass'n*,
    605 F.3d 665 (9th Cir. 2010) ..............................................................................29

*Plotzker v. Lamberth*,
    No. 08-cv-27, 2008 WL 4706255 (W.D. Va. Oct. 22, 2008)............................25

*Press-Enter. Co. v. Super. Ct.*,
    478 U.S. 1 (1986)................................................................................................37

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pub. Utilities Comm'n of State of Cal. v. FERC*,
    100 F.3d 1451 (9th Cir. 1996) ...............................................................40

*Scheibler v. Highmark Blue Shield*,
    243 F. App'x 691 (3d Cir. 2007) ...............................................................8

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984)....................................................................................30

*Stern v. U.S. Dist. Ct. for Dist. of Mass.*,
    214 F.3d 4 (1st Cir. 2000)........................................................................26

*Stewart v. Screen Gems-EMI Music, Inc.*,
    No. 14-cv-4805, 2015 WL 13648928 (N.D. Cal. Jan. 13, 2015) ..................8, 10

*United States v. Bainbridge*,
    746 F.3d 943 (9th Cir. 2014) ...........................................................25, 26

*United States v. Krane*,
    625 F.3d 568 (9th Cir. 2010) ..................................................................40

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950).........................................................................*passim*

*United States v. Peters*,
    937 F.2d 1422 (9th Cir. 1991) .................................................................18

*Valley Bank of Nev. v. Super. Ct.*,
    15 Cal. 3d 652 (1975) ...............................................................................33

*VLSI Tech. LLC v. Intel Corp.*,
    No. 17-cv-5671, 2023 WL 5939387 (N.D. Cal. Mar. 14, 2023)......................22

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**CONSTITUTIONAL PROVISIONS & STATUTES**

28 U.S.C.
§ 455 ..................................................................................*passim*
§ 1291 ...............................................................................................5
§ 2071 ....................................................................................24, 26
§ 2072 ....................................................................................24, 27

CAL. CONST., art. I, § 1 ............................................................................33

U.S. CONST. amend. I ............................................................28, 37, 38

**RULES**

FED. R. APP. P.
4 .......................................................................................................5
10 ...................................................................................................11

FED. R. CIV. P.
7.1 ...................................................................................*passim*
83 ....................................................................................................24

N.D. CAL. CIV. R. 3-15 ...........................................................*passim*

**OTHER AUTHORITIES**

CODE OF CONDUCT FOR U.S. JUDGES Canon 3C (2019) .........................6, 14, 21, 22

Trisha Thadani, *Elon Musk's X Reveals Investors in Court Filing*, WASH. POST (Aug. 21, 2024, 10:20 PM EDT) ..............................................14

## INTRODUCTION

This appeal arises from the improper public disclosure of the identities of the owners of X Holdings Corp., the privately held parent company of X Corp., formerly known as Twitter (together, the "Company"). That disclosure was unconnected to the parties' underlying dispute. This case was filed not to obtain information about the company's shareholders, but to compel the payment of attorney's fees in arbitrations filed by former Twitter employees (the "Plaintiffs"). The district court eventually remanded the case to state court after finding a lack of subject-matter jurisdiction, and the California courts later rejected the Plaintiffs' arguments on the merits. *See Anoke v. Twitter, Inc.*, 105 Cal. App. 5th 153 (2024).

Before that happened, however, the district court interpreted its local corporate disclosure rule to require the Company to disclose the nonpublic list of all of X Holdings Corp.'s shareholders. There was no suggestion that the judge might actually have a conflict of interest. Rather, the court interpreted the local rule to require disclosure of all corporate shareholders merely because the Plaintiffs named X Holdings Corp. as a party to the proceeding. The court initially found good cause to maintain that nonpublic list of owners under seal. But over a year after the remand to state court, the district court reversed its position. It allowed a tech reporter, Jacob Silverman ("Intervenor"), to intervene in the since-remanded case for the sole purpose of unsealing the shareholder list. The court ordered the Company to file the

disclosure statement on the public docket within fifteen days. Yet within just one day of that order, before the Company had an opportunity to seek a stay pending appeal, district court personnel took unannounced unilateral action to unseal the previously filed disclosure statement. That action by court personnel disclosed, for the first time, X Holdings Corp.'s list of shareholders to the world.

This Court should reverse for two main reasons. First, there was no basis to require a corporate disclosure of all X Holdings Corp.'s shareholders in the first place. The district court apparently construed the local rule as requiring any business entity that sues or is sued in the Northern District of California to disclose the identities of every person and entity that holds any ownership interest in the party, however small. If that's right, every corporate party in that district must disclose its full list of shareholders at the start of every case. That is not how Northern District judges actually implement the local rule, and for good reason. The local rule, like its federal counterpart, is meant to assist judges in making informed recusal decisions. Requiring disclosure of tens or hundreds of thousands of shareholders does not serve that goal. Just the opposite, it produces an overwhelming amount of information that just makes appropriate recusal decisions harder. The drafters of the federal corporate disclosure rule sought to avoid such burdensome requirements and information overload. Reading the Northern District of California rule as necessitating such disclosure would thus undermine the purpose of both rules. And when a

2

local rule conflicts with a federal rule, the local rule must give way.  The district court's interpretation of the local rule was legal error, and the Court should reject it.

Second, the district court abused its discretion in ordering that the Company's disclosure statement be unsealed.  The disclosure statement had no bearing on the substance of the case, and so under this Court's precedent the Company needed only show good cause to keep the statement under seal.  The district court had previously ruled—over the Plaintiffs' opposition—that the Company's unrebutted declaratory evidence furnished good cause for sealing the investor list.  After all, that evidence showed that X Holdings Corp.'s private investors have legitimate privacy interests in the confidentiality of their investment, which is private financial information protected by California law and, in some cases, contractual obligations.  But, without explanation for the 180-degree turn, the district court ruled in response to Intervenor's motion that the same evidence was insufficient.  The district court's unexplained change of position was arbitrary and improperly placed a heightened burden on the Company.  That too was legal error warranting reversal.

Beyond these legal flaws, the district court's rulings also set dangerous precedent.  The court's expansive interpretation of its local rule makes it easy for any person to force any private organization to disclose all of its owners to the world simply by filing a suit against that organization in the Northern District of California.  Because corporate disclosure statements are filed at the very start of every action,

before any rulings by the judge, this forced disclosure would be immediate and automatic. It would happen before any judicial inquiry into the merits of the dispute, the propriety of venue, or even the presence of subject-matter jurisdiction. It would also take place outside and well in advance of the discovery process. And then a wholly unrelated third party could insist—months or even years later—that journalistic curiosity overrides the privacy interests of the organization and its investors, state laws protecting those privacy interests, and contractual confidentiality obligations, and requires identifying the owners on the court's public docket. This district court's approach to these issues is a recipe for harassment, and the Court should put an end to it.

Intervenor has moved to dismiss this appeal on the theory that it is moot. For the reasons the Company gave in opposing that motion, the appeal is not moot. But if the Court disagrees, it should vacate the decision below under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), in keeping with the Court's standard practice. Any mootness arose through no fault of the Company but through clerical error when court staff made the disclosure statement publicly accessible the day after the court's ruling, before the court-imposed deadline and before the Company could seek emergency relief. Vacating the erroneous unsealing ruling would clear the way for future litigation of these issues should a future controversy arise over the unsealing of X Holdings Corp.'s nonpublic list of owners.

## STATEMENT OF JURISDICTION

The district court ruled that it lacked subject-matter jurisdiction over the Plaintiffs' petition to compel arbitration and remanded the matter to state court on June 27, 2023. ER-11–15. Nevertheless, the district court issued its order granting Intervenor's motion to intervene and unseal judicial records on August 20, 2024. ER-3–10. On September 19, 2024, the Company filed a notice of appeal. ER-61–63. The appeal is timely because it was filed within 30 days of the order on appeal. *See* FED. R. APP. P. 4(a)(1)(A).

This Court has appellate jurisdiction because the district court's unsealing order is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992). Intervenor moved to dismiss the appeal as moot, and the Company opposed. Dkts. 8, 10, 11. A motions panel referred that motion to the merits panel and expedited the appeal. Dkt. 12.

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in ordering the Company to file a corporate disclosure statement listing the shareholders of X Holdings Corp.

2.      Whether the district court erred in granting Intervenor's motion to unseal the supplemental corporate disclosure statement, which the district court had previously found good cause to maintain under seal.

3.      Whether the Court should vacate the district court's order under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), if the Court concludes that the case is moot.

## STATEMENT OF THE CASE

### I.    Legal Background

#### A.    Federal Rules of Civil Procedure

Rule 7.1 of the Federal Rules of Civil Procedure requires a "nongovernmental corporate party" to "file a statement that: (A) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or (B) states that there is no such corporation." FED. R. CIV. P. 7.1.

The Rules Advisory Committee Notes state that "[t]he information required by Rule 7.1(a) reflects the 'financial interest' standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges." FED. R. CIV. P. 7.1, advisory committee's note to 2002 amendment. The information is intended to "support properly informed disqualification decisions in situations that call for automatic disqualification under Canon 3C(1)(c)." *Id.*

The Advisory Committee recognized that the disclosures required by Rule 7.1 "may seem limited," but emphasized that these limited disclosures are "calculated to reach a majority of the circumstances that are likely to call for disqualification on the basis of financial information that a judge may not know or recollect." *Id.* The

6

Advisory Committee observed that "[f]raming a rule that calls for more detailed disclosure w[ould] be difficult," and emphasized that "[u]nnecessary disclosure requirements place a burden on the parties and on courts" and risk overwhelming the court with volumes of irrelevant information. *Id.*

### B.     Local Rules of the Northern District of California

Rule 3-15 of the Northern District of California Civil Local Rules, titled "Disclosure of Conflicts and Interested Entities and Persons," requires a party to (1) "disclose whether the party is aware of any conflict, financial or otherwise, that the presiding judge may have with the parties to the litigation"; and (2) "disclose any persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or any other entities, other than the parties themselves, known by the party to have either: (i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding." N.D. CAL. CIV. R. 3-15(b)(1)-(2).

The rule states that "financial interest" shall have the same meaning assigned by 28 U.S.C. § 455(d)(4).  N.D. CAL. CIV. R. 3-15(b)(3).  That statute, in turn, provides that "financial interest" means "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party."  28 U.S.C. § 455(d)(4).

The purpose of Local Rule 3-15, much like Rule 7.1, is "to provide sufficient information for the presiding judge to make an informed determination regarding disqualification or recusal." *Stewart v. Screen Gems-EMI Music, Inc.*, No. 14-cv-4805, 2015 WL 13648928, at *1 (N.D. Cal. Jan. 13, 2015); *see also Scheibler v. Highmark Blue Shield*, 243 F. App'x 691, 694 (3d Cir. 2007) (noting that Rule 7.1 disclosure statements are "intended to provide judges with information to determine if any financial interests require the judge to disqualify him or herself from the case"); *FishDish, LLP v. Veroblue Farms USA, Inc.*, No. 19-cv-3026, 2019 WL 13328532, at *1 (N.D. Iowa July 26, 2019) ("The requirement to file corporate disclosure statements . . . exists 'to provide judges with information to determine if any financial interests require the judge to disqualify him or herself from the case.'" (citation omitted)); *Best Odds Corp. v. iBus Media Ltd.*, No. 14-cv-932, 2014 WL 5687730, at *3 (D. Nev. Nov. 4, 2014) (noting that the purpose of Rule 7.1 is to "enabl[e] the court to determine whether a conflict of interest exists").

## II.    Factual and Procedural Background

### A.    The Company removed this proceeding from state court, and the Plaintiffs challenged the Company's corporate disclosure.

On April 27, 2023, the Plaintiffs filed a petition to compel arbitration in San Francisco County Superior Court.  D. Ct. Dkt. 1-1.  The Company timely removed the proceeding to the Northern District of California.  D. Ct. Dkt. 1.  It contended

that the court had subject-matter jurisdiction because the Plaintiffs sought to compel federal claims to arbitration. *Id.*

On May 8, 2023, the Company filed a routine Corporate Disclosure Statement and Disclosure of Conflicts and Interested Entities and Persons, in compliance with Rule 7.1 and Local Rule 3-15. ER-59–60. The statement certified that Twitter, Inc. had been merged into X Corp. and no longer existed. *Id.* It further certified that X Holdings I, Inc. had been merged into X Holdings Corp. and no longer existed. *Id.* The statement identified X Holdings Corp. as the parent corporation of X Corp., and certified that no publicly held corporation owned 10% or more of X Corp.'s or X Holding Corp.'s stock. *Id.* The Company further certified that, under Local Rule 3-15, there was no conflict or interest other than the named parties to report. ER-59–60; *see also* N.D. CAL. CIV. R. 3-15(c)(3) ("If there is no conflict or interest to be disclosed, the Certification shall state: 'Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, there is no conflict or interest (other than the named parties) to report.'").

On May 11, 2023, the Plaintiffs filed an administrative motion contending that the disclosure statement failed to comply with Local Rule 3-15. D. Ct. Dkt. 19. The Plaintiffs did not contend that the statement violated Rule 7.1. But they argued that the statement violated the local requirement by failing to disclose the identities of all shareholders of X Holdings Corp., the privately held parent company of X Corp. *Id.*

9

The Plaintiffs argued that such a disclosure was obligatory because Local Rule 3-15 requires disclosure of any persons or entities known by the party to have "a financial interest of any kind in the subject matter in controversy or in a party to the proceeding." *Id.*

The Company opposed, explaining that the disclosure statement already complied with both Rule 7.1 and Local Rule 3-15. D. Ct. Dkt. 25. The statement gave the district court ample opportunity to assess whether a conflict of interest existed, and thus satisfied the function of both Rule 7.1 and Local Rule 3-15. *Id.* The Company distinguished the single case that the Plaintiffs' motion had cited, in which a defendant had failed to comply with both Rule 7.1 and Local Rule 3-15. *Id.* (citing *Stewart*, 2015 WL 13648928, at *2). Finally, the Company emphasized that "Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-15 do not serve Claimants; they serve the Court and its interests in avoiding conflicts of interest." *Id.*

On June 6, 2023, without hearing oral argument, the district court issued a text-only order, granting the Plaintiffs' administrative motion and directing the Company to "supplement" the original corporate disclosure statement. ER-17.

### B. The district court granted the Company's motion to file the supplemental corporate disclosure statement under seal.

On June 9, 2023, the Company filed an administrative motion seeking to file under seal the portion of the supplemental corporate disclosure statement that the district court had ordered listing the owners and shareholders of X Holdings Corp.

10

*See* ER-50–55.[1]  The motion explained that "[b]ecause the sole purpose of the Corporate Disclosure Statement under Local Rule 3-15 is to allow the Judge to determine whether a conflict exists that would necessitate recusal, no legitimate purpose is served by any public-facing filing of this private and confidential information." *Id.*

The Company filed a supporting declaration from Senior Director of Finance at X Corp., Dhruv Batura.  ER-56–58.  The declaration explained that the owners/shareholders of X Holdings Corp. included various individuals, private family and other trusts, and other private entities.  *Id.*  Mr. Batura explained that as a matter of routine practice and policy, X Holdings Corp. does not publish or make publicly available information regarding its owners/shareholders and treats such information as confidential.  *Id.*  Mr. Batura further explained that individuals and entities investing and taking an ownership interest in X Holdings Corp. expect that such information will remain private, and that disclosure of such information violated this expectation of privacy.  Mr. Batura stated that, in certain cases, X Holdings Corp. is contractually bound to keep such information confidential.  *Id.*  Mr. Batura also ex-

---

[1] The Company's administrative motion to seal (D. Ct. Dkt. 36) and supporting declaration (D. Ct. Dkt. 36-1) have apparently been removed from the district court's public docket, but they contain no nonpublic information and are part of the record on appeal, *see* FED. R. APP. P. 10(a), and so are reproduced in the Excerpts of Record.

plained that disclosure of information regarding X Holdings Corp.'s owners/share-holders could potentially harm or prejudice X Holdings Corp.'s business interest, and that X Holdings Corp. has policies that prohibit employees from accessing information beyond what is reasonably necessary to perform their duties, limiting access to certain nonpublic information, permitting access to documents and data on a need-to-know basis, and requiring employees to sign confidentiality agreements. *Id.*

The Plaintiffs filed an opposition on June 12, 2023, arguing that the Company lacked "compelling reasons" or "good cause" to "overcome the presumption of public access." ER-43–49. That same day, the Company filed a short reply in support of their motion to seal. ER-41–42.

On June 13, 2023, the district court issued an order granting the Company's motion to seal the supplemental corporate disclosure statement. ER-16. The district court ordered the Company to provide the Plaintiffs a copy of an unredacted version of the supplemental statement, on the condition that the Plaintiffs and their counsel "shall maintain the confidentiality of the statement." *Id.*

Meanwhile, the Plaintiffs had filed an opposed motion to remand the case, arguing that the court lacked subject-matter jurisdiction. D. Ct. Dkts. 24, 31, 34. On June 27, 2023—two weeks after granting the Company's motion to seal—the district court remanded the action back to state court. ER-11–15. The district court's order emphasized that remand to state court is proper where there is a "lack of subject-

12

matter jurisdiction or for any defect in removal procedure" and found that federal-question jurisdiction in the case was "lacking." *Id.*

### C. Jacob Silverman successfully moved to intervene and unseal the supplemental corporate disclosure statement.

On July 3, 2024, over a year after the remand order, Jacob Silverman moved to intervene and unseal judicial records, seeking to undo the district court's prior order sealing the identities of the shareholders of X Holdings Corp. D. Ct. Dkt. 44. The Company opposed intervention and unsealing. D. Ct. Dkt. 47. As the Company explained, the district court had already found good cause existed to justify the sealing of the statement. *Id.* In addition, the Company contended that the June 6, 2023 order requiring it to supplement the corporate disclosure statement to list the identities of X Holdings Corp.'s shareholders was improper and not required by the text of Rule 7.1 or Local Rule 3-15. *Id.*

On August 20, 2024, the district court granted the motion to intervene and unseal. ER-3–10. The district court decided that the Company had not met their burden under the "good cause" standard because the Company had filed "no new evidence" and had only referred back to the declaration originally filed in support of their successful 2023 sealing motion. *Id.* Without addressing the district court's prior ruling that the same declaration furnished good cause for sealing, the district

court accused the Company of having presented "little more than conjecture in support of their position." *Id.* The district court said it was "unable to discern a factual basis for sealing the disclosure." *Id.*

The district court further concluded that "[t]he corporate disclosures required by Federal Rule of Civil Procedure 7.1 and this district's Civil Local Rule 3-15 'support properly informed disqualification decisions in situations that call for automatic disqualification under Canon 3C(1)(c)' of the Code of Conduct for United States Judges," citing the advisory committee's note on Rule 7.1. *Id.* The district court also stated—without citing any authority—that "[j]udicial conflicts of interest are not matters that can be resolved among the Court and the parties alone; the public has an independent interest in overseeing this process." *Id.* As a result, the district court ordered the Company to file the unredacted version of the supplemental corporate disclosure statement on the public docket by September 4, 2024, fifteen days later. *Id.*

### D. Before the Company's deadline to file the unredacted disclosure statement, court personnel unsealed the document in error.

On August 21, 2024—just one day after the district court's unsealing order, and two weeks before the deadline for compliance with the order— the Company learned that copies of the unsealed version of its supplemental disclosure statement (D. Ct. Dkt. 36-4) were already in the public domain. *See* Trisha Thadani, *Elon Musk's X Reveals Investors in Court Filing*, WASH. POST (Aug. 21, 2024, 10:20 PM

EDT), https://www.washingtonpost.com/technology/2024/08/21/elon-musk-x-investors/.

As soon as the Company discovered this—late on August 21, 2024—its counsel emailed the district court's courtroom deputy and docketing team. Counsel explained that they had "learned late [that] evening that the unredacted Statement, ECF No. 36-4 . . . , ha[d] been made publicly available on the Court's Pacer system." Dkt. 10.1, Ex. B, at 2. Counsel asked how this had happened and whether it was a mere administrative error, and requested that the document immediately be returned to its sealed/redacted status to prevent further public disclosure. *Id.* The next morning, the courtroom deputy responded that she had "resealed the corporate disclosure statement pursuant to [the Company's] request" and explained that "[t]he document was unsealed in error." *Id.* at 1.

By this point, many outlets were reporting on the investor list, which was widely available on the internet. Dkt. 10.1, Ex. A. Among them was Intervenor's own website. *Id.* On August 24, 2024, he authored a post in which he observed: "After Judge Illston's ruling, the list soon appeared on the court docket (apparently it's just a matter of a clerk clicking to change permissions on a limited-access filing) and was reported on first by the Washington Post and then in many other publications." *Id.* With the investor list already in wide circulation, the Company no longer had a colorable basis to seek a stay of the district court's order pending appeal—

because they could not demonstrate that a stay was necessary to prevent irreparable harm. *See, e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1058-59 (9th Cir. 2020) (identifying the requirements for a stay pending appeal). The Company therefore complied with the district court's order on September 4, 2024. *See* D. Ct. Dkt. 54. This appeal followed. ER-61–63.

## SUMMARY OF THE ARGUMENT

I.     The Court should reverse the unsealing order because it was premised on an erroneous order to disclose X Holdings Corp.'s full list of owners. The Federal Rules of Civil Procedure do not require such disclosure, and the local rules of the Northern District of California, properly read, do not require it either. The disclosure rules exist to help judges make informed disqualification decisions. And when the local rule is interpreted in light of its context and purpose, it merely requires parties to disclose known interests that could bear on a judge's informed disqualification decision. It does not require burdensome disclosures of every person who owns any stake in the party, however small and however irrelevant to the judge's recusal. The district court's contrary interpretation would obligate every corporate party in the Northern District of California to disclose its full shareholder register in every case. That is not how parties or judges are actually construing the local rule, for very good reason. Such an interpretation would impose enormous burdens and undermine the whole point of corporate disclosure rules by flooding courts with reams of irrelevant

16

information. And it would require parties to submit private and sensitive information before any discovery or even finding of subject-matter jurisdiction, creating a massive risk of gamesmanship and harassment. This radical interpretation of the local rule creates an impermissible conflict with the federal rule, improperly tramples on substantive privacy rights, and should be rejected.

II.    Even if there were some basis to require the disclosure here, there still would be no basis to unseal it. Because of the lack of connection between X Holdings Corp.'s owner list and the actual litigation, the Company needed only show good cause to maintain the filing under seal. The Company made that showing, and the district court necessarily found that the Company made that showing when it granted the Company's original motion to seal over the Plaintiffs' objection. Over a year later, the district court then deemed the same unrebutted evidence insufficient to establish good cause, without providing any explanation for its reversal in position. The district court was right the first time: good cause supported sealing because the owner list implicated legally protected privacy interests. The district court committed legal error and abused its discretion in demanding greater support to keep the list under seal.

III.    If the Court is inclined to grant Intervenor's motion to dismiss the appeal on mootness grounds, the Company renews its request to vacate the decision below under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). That is the

standard practice in this Court and other federal courts if an appeal becomes moot through no fault of the appealing party. Here, if the appeal is moot, it is because of the actions of district court staff, who placed the ownership list on the court's public docket two weeks before the deadline for the Company to respond to the unsealing order. This appeal presents a textbook example for *Munsingwear* vacatur, assuming the appeal is moot in the first place.

## STANDARD OF REVIEW

The interpretation of federal and local court rules presents questions of law that the Court reviews de novo. *See, e.g.*, *United States v. Peters*, 937 F.2d 1422, 1424 (9th Cir. 1991). The Court likewise "determines de novo whether there is a conflict between a local rule and a Federal Rule." *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013).

The Court reviews unsealing rulings for abuse of discretion. *See, e.g.*, *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992). Still, insofar as the district court's rulings turn on issues of law, de novo review applies. *Id.*

## ARGUMENT

### I. The district court erred in ordering the Company to disclose X Holdings Corp.'s shareholders.

The district court's order should be reversed for the simple reason that there should have been no supplemental disclosure to unseal. In ordering the Company to disclose every shareholder of X Holdings Corp., the district court misconstrued the

applicable law. The Company's original disclosure complied with both Rule 7.1 and Local Rule 3-15, and the district court's contrary conclusion creates an impermissible conflict between the rules and produces absurd results.

There is no dispute that the Company's original disclosure complied with Rule 7.1. The federal rule requires that a nongovernmental corporation disclose "any parent corporation and any publicly held corporation owning 10% or more of its stock." FED. R. CIV. P. 7.1(a)(1)(A). The Company originally disclosed that "X Corp. is wholly owned by X Holdings Corp" and that "[n]o publicly held corporation owns 10% or more of X Corp.'s or X Holdings Corp.'s stock." ER-59–60.

Nothing further was required by Rule 7.1. The Federal Rules Advisory Committee deliberately settled on "limited" disclosure requirements, recognizing that it was not "feasible to dictate more detailed disclosure requirements in Rule 7.1(a)." FED. R. CIV. P. 7.1, advisory committee's note to 2002 amendment. The Advisory Committee noted that "[u]nnecessary disclosure requirements place a burden on the parties and on courts." *Id.* What's more, "[u]nnecessary disclosure of volumes of information may create a risk that a judge will overlook the one bit of information that might require disqualification." *Id.* And "[u]nnecessary disclosure . . . also may create a risk that unnecessary disqualifications will be made." *Id.*

The Company's original disclosure also satisfied Local Rule 3-15. The rule requires disclosure of known conflicts that the judge may have with the parties and

known interests that nonparties may have in the litigation or parties. *See* N.D. CAL. CIV. R. 3-15(b)(1)-(2). The Company certified, pursuant to Local Rule 3-15, that there was no conflict or interest to report (other than the named parties themselves). ER-59–60. On its face, this certification complied with both the rule's requirements. *See* N.D. CAL. CIV. R. 3-15(c)(3).

To be sure, Local Rule 3-15 contains some broad language, which the Plaintiffs highlighted. In describing the interests that must be disclosed, the rule requires disclosure of any persons or entities known by the party to have "(i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding." N.D. CAL. CIV. R. 3-15(b)(2). But this language must be interpreted in light of the rule's context and purpose, which limit the required disclosures to interests that might lead the assigned judge to recuse.

As for context, the rule expressly incorporates the definition of "financial interest" from 28 U.S.C. § 455(d)(4). N.D. CAL. CIV. R. 3-15(b)(3). That statutory section uses the term "financial interest" to identify circumstances when a judge is required to disqualify in a proceeding: when the judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, *has a financial interest in the subject matter in controversy or in a party to the proceeding, or*

20

*any other interest that could be substantially affected by the outcome of the proceeding*." 28 U.S.C. § 455(b)(4) (emphasis added). That italicized language is almost identical to the disclosure requirements in Local Rule 3-15. And the statutory language as a whole closely tracks Canon 3C(1)(c) of the Code of Conduct for United States Judges, which requires disqualification when "the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding." CODE OF CONDUCT FOR U.S. JUDGES Canon 3C(1)(c) (2019).

These close parallels in language are important. It is a well-settled principle of statutory interpretation that language "addressing the same subject matter generally should be interpreted consistently with each other." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022) (citation and quotation marks omitted). That principle applies with special force when, as here, the language in one enactment "is the same as, or similar to," the language in the other enactments. *Id.* The references to financial interests in Section 455 and Canon 3C(1)(c) all explicitly refer to interests that the judge (or close family members) may have in the litigation or parties and that might therefore require recusal. If a party has no reason to think that the persons and entities with interests in the

litigation nor parties implicate the judge, Local Rule 3-15 should not be construed as requiring their disclosure.

The purpose of these provisions gives further support for that interpretation. Each of these provisions addresses information on which a judge might base a recusal decision. As with Section 455 and Rule 7.1, the point of Local Rule 3-15 is "[t]o help the Court to assess disqualification." *VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-5671, 2023 WL 5939387, at *1 (N.D. Cal. Mar. 14, 2023). And in adopting Rule 7.1, the Rules Advisory Committee stated that "The information required . . . reflects the 'financial interest' standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges." FED. R. CIV. P. 7.1, advisory committee's note to 2002 amendment. That is the very standard incorporated into Local Rule 3-15, as shown above. The Advisory Committee recognized that Rule 7.1 does not "cover all of the circumstances that may call for disqualification under the financial interest standard," but Rule 7.1 at least reflects the Advisory's Committee's view as to what Canon 3C(1)(c) requires in terms of disclosure of corporate ownership. *Id.* Because both rules seek to apply this same standard, Local Rule 3-15 should be construed in harmony with Rule 7.1 as requiring disclosure only of persons or entities that the party knows have some relevance to the judge's disqualification decision.

Any other interpretation is unworkable and produces absurd results. Below, the Plaintiffs proposed a wooden interpretation of Local Rule 3-15, which requires

disclosure of any person or entity who has any ownership stake in a party. D. Ct. Dkt. 19, at 2 ("*Someone* owns Respondent X Holdings Corp. And because X Holdings Corp. is a party, Local Rule 3-15 therefore requires it to disclose their identities."). On this view, any business sued in the Northern District of California must disclose anyone who has "ownership of a legal or equitable interest, however small," in that business. 28 U.S.C. § 455(d)(4). For a publicly traded corporation, such a requirement would mandate disclosure of the full shareholder register in every lawsuit—often identifying tens or hundreds of thousands, if not millions, of individuals and entities who own even a miniscule amount of the corporation's shares. That can't be right. And there is no indication it is. Corporate defendants are not routinely disclosing complete lists of their shareholders in every Northern District of California lawsuit. Such disclosure would be impractical and extremely burdensome.

The district court seemingly adopted this extreme reading of Local Rule 3-15, although it couched the issue in terms of X Holdings Corp.'s status as a privately owned corporation. *See* ER-17 ("[B]ecause X Holdings Corporation is a privately owned corporation, Civil Local Rule 3-15 requires defendants to disclose who owns X Holdings Corporation because that person or persons have a "financial interest of any kind in the subject matter in controversy."). But absolutely nothing in Local Rule 3-15, or Section 455, distinguishes between privately and publicly owned entities. If anything, disclosing the owners of a privately held corporation would seem

23

even less appropriate.  Presumably few judges own stakes in privately held companies, and the ones who do already know that they do.  In addition, the identity of owners of privately held corporations is generally not a matter of public record.  So allowing compelled disclosure of their identities creates an increased risk of harassment and abuse.  In any event, the Plaintiffs' reading of the relevant provisions extends to any shareholder of any corporate party—public or private.  There is no way to avoid the absurd implications of that reading.

Such a reading of Local Rule 3-15 is not only absurd; it is legally impermissible.  It would place the local rule in conflict with Rule 7.1.  "Local Rules cannot be incompatible with Federal Rules."  *ABS Ent., Inc. v. CBS Corp*., 908 F.3d 405, 427 (9th Cir. 2018) (citing FED. R. CIV. P. 83(a)(1)).  On the contrary, under the Rules Enabling Act, local "rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title."  28 U.S.C. § 2071(a); *see, e.g.*, *Frazier v. Heebe*, 482 U.S. 641, 645-46 (1987) ("Section 2071 requires that local rules of a district court 'shall be consistent with' the 'rules of practice and procedure prescribed by the Supreme Court.'" (citation omitted)).  Thus, this Court has "an obligation to construe local rules so that they do not conflict with the federal rules" and will "exercise[] [its] ingenuity in doing so."  *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995).

24

The district court's interpretation of Local Rule 3-15 creates a serious conflict with Rule 7.1. The federal rule creates a "calculated" disclosure regime to accomplish the purposes of the disqualification requirements. FED. R. CIV. P. 7.1, advisory committee's note to 2002 amendment; *see also, e.g.*, *Plotzker v. Lamberth*, No. 08-cv-27, 2008 WL 4706255, at *12 (W.D. Va. Oct. 22, 2008) ("Corporate disclosure statements are required to contain *limited* information, and are not meant to be used as discovery tools." (emphasis added)). As recounted above, the Advisory Committee explained that broader disclosure requirements present real drawbacks: they burden the parties and the courts, and they can produce information overload that increases the risk of an erroneous disqualification decision. FED. R. CIV. P. 7.1, advisory committee's note to 2002 amendment. The district court's interpretation, if permitted to stand, will do just that. It will impose extraordinary burdens on litigants and judges and make it much harder for judges to focus on the types of interests that genuinely bear on recusal, in addition to opening the door to litigation abuse.

In its unsealing order, the district court quoted the Advisory Committee Note's statement that "Rule 7.1 does not prohibit local rules that require disclosures in addition to those required by Rule 7.1." ER-9. But that general statement cannot reasonably be read to suggest that the local rule, as expansively interpreted here, is compatible with Rule 7.1. For one thing, a note of the Federal Rules Advisory Committees "does not have the force of law." *United States v. Bainbridge*, 746 F.3d 943,

25

947 (9th Cir. 2014). They may receive some weight in interpreting a rule's require-
ments, such as when they help clarify an ambiguity in the rule's text. *See id.* But
they are not binding on courts—particularly when, as here, the question is not simply
what Rule 7.1 requires of litigants but what the Rules Enabling Act permits in a local
rule. The Advisory Committee Note's general statement cannot resolve the statutory
question of whether the district court's interpretation of the local rule is "consistent
with" Rule 7.1. 28 U.S.C. § 2071(a).

To the extent the Advisory Committee Note has any bearing on that issue, it
confirms that the local rule is *not* consistent with the federal rule. The Advisory
Committee Note makes clear that overly broad disclosures undermine the purpose
of the federal rule by making informed disqualification decisions harder. *See, e.g.*,
*Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 13 (1st Cir. 2000) ("Even if a
local rule does not contravene the text of a national rule, the former cannot survive
if it subverts the latter's purpose."). It is hard to imagine a broader disclosure than
what would be required under the district court's interpretation of Local Rule 3-15.
To keep the local rule within permissible limits, it must be confined like its federal
counterpart to disclosures of known interests that might reasonably be thought to
raise recusal issues. Perhaps there are legitimate reasons for local requirements that
expand the range of disclosures beyond corporate parties (which are all that Rule
7.1(a)(1) covers) to other entities, like LLCs, partnerships, or trusts—at least when

26

those entities have some ostensible relationship to the judge and therefore to an informed disqualification decision by the judge.  But requiring disclosures beyond that—particularly disclosures dumping pages upon pages of information irrelevant to a disqualification decision, such as the names of individuals or private trusts who own stakes in X Holdings Corp.—undermines rather than promotes the purposes of the rules, canons of conduct, and related statutes.

Decoupling Local Rule 3-15 from its only legitimate purpose also needlessly infringes on substantive privacy rights.  *See* 28 U.S.C. § 2072(b) (providing that federal "rules shall not abridge, enlarge or modify any substantive right").  Extending Local Rule 3-15 beyond any reasonable suspicion of a judicial conflict, to require automatic disclosure of every business's full ownership, would regularly abridge substantive rights when the entity's owners are not publicly known.  As discussed in the next section, state law often protects privacy interests in financial activities.  Under the district court's expansive theory, however, its local rule can preempt any state's privacy laws, and any party can obtain any ownership information about any entity simply by filing suit in the Northern District of California.  Because Local Rule 3-15 requires each non-governmental party to submit its local disclosure statement "with its first appearance, filing, or other request addressed to the court," N.D. CAL. CIV. R. 3-15(a)(1), this often-sensitive information would have to be disclosed before a defendant could move to dismiss or transfer.  Local Rule 3-15 thus would

require the disclosure even if the plaintiff fails to state a claim, even if the Northern District of California is an improper venue for the action, and even if (as here) the court is ultimately found to lack subject-matter jurisdiction. The potential for abuse is obvious.

The district court's 2023 order requiring the Company to supplement its disclosure statement was based on an erroneous interpretation of Local Rule 3-15. Because of that legal error, there was no basis for the district court's order over a year later requiring the unsealing of the supplemental statement. That information should never have been on the court's docket in the first place. For this reason, the unsealing order should be reversed.

## II. The district court abused its discretion in granting the motion to unseal the supplemental corporate disclosure statement.

The Court should also reverse the district court because it abused its discretion in ordering the unsealing of the supplemental disclosure. The district court previously determined that there was good cause to seal the supplemental disclosure and then did an about-face without justification. The initial finding of good cause was warranted. The disclosure here did not implicate the public's legitimate interest or any First Amendment right in access to court proceedings, and sealing was supported by a strong privacy interest in the confidentiality of this personal financial information.

A.    **The Company demonstrated good cause for maintaining the supplemental disclosure under seal.**

In articulating the standard governing sealing of court filings, this Court has drawn a distinction between dispositive and non-dispositive motions.  For factual materials submitted in support of dispositive motions, sealing must be supported by "compelling reasons," but for submissions in support of non-dispositive motions, a showing of "good cause" is all that is required.  *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citing *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)).

In *Phillips*, the Court found that "[w]hen a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality."  307 F.3d at 1213. The Court reasoned that "[a]pplying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders." *Id*.

That approach aligns with the decisions of the Seventh and Tenth Circuits, which similarly recognize that the presumption of the public's right of access does not apply to sealed documents attached to non-dispositive motions.  *Id*. (agreeing with those circuits that "the federal common law right of access does not apply to

29

documents filed under seal"). In *Phillips*, the Court was mindful of the "public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.)," but it concluded that it would make "little sense" to render a district court's protective order useless simply because the sealed document was attached to some non-dispositive motion filed with the court. *Id*. (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), which reasoned that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action").

As a result, in the Ninth Circuit, the presumption of the public's right of access to judicial records is rebutted for documents that the district court has decided should be shielded from the public and that are tied to non-dispositive motions. *Id*. Under those circumstances, when the party seeking to maintain a document under seal has demonstrated good cause, the party seeking unsealing is the one who bears the burden of presenting "sufficiently compelling reasons" for the requested relief. *Id*.

*Phillips* remains good law, although the Court has clarified that the focus of the distinction between non-dispositive and dispositive motions is "whether the motion at issue is more than tangentially related to the underlying cause of action." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016) (collecting authorities). The Court in *Center for Auto Safety* recognized that "nondispositive motions are sometimes not related, or only tangentially related, to the merits of a

case, as in *Phillips*," but some nondispositive motions, such as motions in limine, may be "strongly correlative to the merits of a case" and justify the application of the compelling reasons standard. *Id*.

Here, the supplemental disclosure that Intervenor sought to unseal is nothing like a dispositive motion. The supplemental disclosure was not related to the merits of the Plaintiffs' soon-to-be-remanded petition to compel, much less "strongly correlative to the merits of [the] case." *Id.* Thus, the Company needed only demonstrate good cause for sealing their supplemental disclosure.

The Company did so. In fact, by the time Intervenor filed his motion, the district court had already ruled on the Company's opposed motion to seal and had found good cause for sealing over the Plaintiffs' objections. In doing so, it considered—and necessarily rejected—many of the same arguments Intervenor later advanced. *See* ER-47–49 (arguing that the Company's declaration failed to establish compelling reasons or good cause for sealing). The district court engaged in the balancing inquiry and necessarily determined that good cause, at a minimum, existed to prevent the information in the supplemental disclosure from being disclosed to the public. ER-16. As a result, the presumption of public access was "rebutted, so that the party seeking disclosure"—Intervenor—needed to "present sufficiently compelling reasons why the sealed [disclosure] document should be released." *Phillips*, 307 F.3d at 1213.

In reversing course, the district court purported not to decide which standard applied, stating that the Company failed to meet the good-cause standard. ER-8. The court's reasoning does not support that conclusion. On the contrary, the district court improperly applied the common law presumption of access and subjected the Company to the more stringent "compelling reasons" standard, even though it had already found good cause for sealing. *See* ER-9 (stating that "[i]n considering whether the presumption of access has been overcome," and "[a]fter taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture" (citations omitted)).

That invocation of the right of access despite the prior finding of good cause was legal error. *See Phillips*, 307 F.3d at 1213. And, at a minimum, the court's decision was an abuse of discretion because the court did not provide any reason for changing its mind. It simply noted that "courts routinely revisit sealing orders upon a request by an intervenor." ER-7 n.4. For that proposition, the district court relied on a case involving a request to reevaluate a prior sealing that had been unopposed. *See Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 794 (9th Cir. 2019) (intervention to unseal record sealed pursuant to settlement agreement). Whatever reasons there might be for revising an uncontested unsealing decision, the original motion to seal here was vigorously opposed, the parties fully briefed the matter, and

the district court sided with the Company.  D. Ct. Dkts. 36, 37, 38.  The district court provided no explanation for changing its mind this time around.  Worse yet, the court faulted the Company for "fil[ing] no new evidence but refer[ring] back to the declaration originally filed in support of their sealing motion."  ER-8.  Given the court's prior ruling that this evidence furnished good cause for sealing, the Company had no reason to suspect the court would draw the opposite conclusion a year after the federal proceedings had concluded.

The district court was correct the first time.  The Company's declaratory evidence demonstrated good cause to seal the portions of the filing that reveal the identities of X Holdings Corp.'s owners.  They have no involvement in the litigation and both they and the Company have legitimate interests in maintaining the confidentiality of this sensitive confidential and private business information.  For example, Article I, Section 1 of the California Constitution establishes a constitutional inalienable right to privacy, which includes the privacy of a person's financial information, such as investments and financial holdings.  *See* CAL. CONST., art. I, § 1 (providing that a person's privacy is an "inalienable right"); *see also Valley Bank of Nev. v. Super. Ct.*, 15 Cal. 3d 652, 656 (1975) (emphasizing that the "inalienable right" of privacy under the California Constitution "extends to one's confidential financial affairs" (citation omitted)); *Overstock.com, Inc. v. Goldman Sachs Grp., Inc.*, 231 Cal. App. 4th 471, 503 (2014) ("This right embraces confidential financial

33

information in 'whatever form it takes[.]'" (citation omitted)); *EFT Holdings, Inc. v. CTX Virtual Techs., Inc.*, No. 15-cv-1597, 2016 WL 11519280, at *3 (C.D. Cal. Nov. 3, 2016) ("The term 'financial privacy' is utilized broadly and encompasses not only bank records, but also documents generated in one's business affairs that have not received widespread dissemination or have not been publicly filed.").

As the Company demonstrated, the owners/shareholders of X Holdings Corp. include various individuals, private family and other trusts, and other private entities (such as funds, LLCs, and corporations). ER-57. Individuals and entities investing and taking an ownership interest in a private corporation such as X Holdings Corp. expect that such information will remain private—and legal guarantees such as those in the California Constitution recognize they have a right to do so. The disclosure of such information violates this expectation of privacy. Thus, as a matter of routine practice and policy, X Holdings Corp. does not publish or make publicly available information regarding its owners/shareholders and treats such information as confidential. *Id.*

In certain cases, X Holdings Corp. is also contractually bound to keep such information confidential. *Id.* To that end, X Holdings Corp. has policies that prohibit employees from accessing information beyond what is reasonably necessary to perform their duties, limiting access to certain nonpublic information, permitting access to documents and data on a need-to-know basis, and requiring employees to

sign confidentiality agreements. *Id.* The act of disclosing (and making public) financial information protected by a right of privacy harms owners' privacy interests and, by extension, harms the company's ability to attract investors. *Id.*

The district court ignored these important interests. Instead, the court erroneously dismissed the Company's unrebutted declaratory evidence as "little more than conjecture." ER-8. But the legally protected privacy interests of a party's investors are not conjecture. *See, e.g.*, *Charles O. Bradley Tr. v. Zenith Cap. LLC*, No. 04-cv-2239, 2006 WL 798991, at *2 (N.D. Cal. Mar. 24, 2006) ("Defendants articulated at the hearing a specific harm to their business interest—disclosure of sensitive client information in litigation would detract future investors from entrusting Defendants with their finances."). The district court's contrary conclusion was legal error, and therefore an abuse of discretion, particularly given the unexplained reversal of its prior evaluation of the same evidence. Moreover, the district court's decision creates a situation ripe for abuse. On its view all anyone must do to undermine the financial privacy interests of any entity is file suit against that entity in the Northern District of California. And, before any jurisdictional determination has been made, or any discovery conducted, that party could be entitled to disclosure of sensitive information.

Because the Company showed good cause for sealing the supplemental disclosure, Intervenor bore the burden to present "sufficiently compelling reasons" for

reversing that sealing. *Phillips*, 307 F.3d at 1213. He cannot. Again, Rule 7.1 and Local Rule 3-15 serve the court and its ability to make informed disqualification decisions. When, as here, both sides in the litigation have access to sealed, nonpublic corporate disclosure information and have raised no recusal-related issues in the litigation, the public generally has no separate interest in obtaining that information. Nothing in Intervenor's motion suggested a genuine interest in investigating disqualification-related questions; rather, Intervenor made clear that his true interest was in learning the list of investors in a prominent social media company because social media is "the modern public square" and he covers technology companies. ER-27. Perhaps the public would have an interest in disqualification-related court records if a party had raised recusal concerns on the basis of nonpublic information and the public had no way to evaluate those concerns. But here, Intervenor used a (misinterpretation of a) corporate disclosure rule as a hook for obtaining nonpublic information about a prominent company even though that information had no ostensible connection to the course of the judicial proceedings.

Maintaining the supplemental disclosure under seal would have fully protected the interests that the disclosure rules are designed to protect while also protecting the private interests of the Company and its investors. *See, e.g.*, *Best Odds Corp.*, 2014 WL 5687730, at *2 (granting the defendant's motion to file a redacted certificate of interested parties and noting that sealing the disclosure will "(1) satisfy

Rule 7.1's purpose, by enabling the court to determine whether a conflict of interest exists, and (2) act as a prophylactic against potential[] litigation abuses that will needlessly increase the cost of litigation."). The district court's contrary ruling was an abuse of discretion.

### B. Intervenor does not have a First Amendment right of access to the supplemental disclosure.

The Company anticipates that Intervenor may argue that the First Amendment right of access supports the unsealing of the supplemental disclosure. Although the Court need not reach this issue because the district court did not reach it, if the Court does so, it should reject Intervenor's contentions.

Courts apply an "experience and logic" test to evaluate "the institutional value of public access to judicial proceedings and records to determine whether the First Amendment provides a presumption of access." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020). "To determine whether a First Amendment right of access attaches to a type of judicial proceeding or record, [courts] consider (1) whether that proceeding or record 'ha[s] historically been open to the press and general public' and (2) 'whether public access plays a significant positive role in the functioning of the particular [governmental] process in question.'" *Id.* (quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986)). Thus, to prevail on his First Amendment right of access claim, Intervenor must show that disclosure statements listing all of a corporate parties' owners (1) have historically been open to the press

and general public, and (2) play a significant positive role in the functioning of the particular governmental process in question. *See id*.

As an initial matter, the Company is not aware of a single Ninth Circuit decision granting a request to unseal a corporate disclosure statement based on a First Amendment right-of-access theory (nor is the Company aware of any Ninth Circuit decision granting such a request based on a common law right-of-access theory). In fact, a court within the Northern District of California has questioned whether the First Amendment standard even applies to access to civil proceedings, as opposed to criminal ones. *See Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2019 WL 188671, at *2 (N.D. Cal. Jan. 14, 2019) ("The Ninth Circuit has not squarely addressed whether the First Amendment standard also applies to access to civil proceedings as opposed to access to criminal judicial records and documents.").

Intervenor fares no better on the second factor, which looks to the role that the type of document plays in the proceedings. Although corporate disclosure statements are generally publicly available on court dockets, the information regarding the identities of privately held companies' shareholders is not. Even if Local Rule 3-15 could lawfully be interpreted as requiring such overbroad disclosure, there still would be no basis to imply a constitutional right of access to it given the lack of any meaningful connection to grounds for disqualification. It is not the public that plays the principal role in the functioning of the disqualification process, but the judge.

*See Best Odds Corp.*, 2014 WL 5687730, at *3 (noting "Rule 7.1's purpose" which is to "enable[e] the court to determine whether a conflict of interest exists"). The information in a corporate disclosure statement is provided so the assigned judge can evaluate whether to recuse. It is not provided for the public's benefit, much less the public's curiosity about ownership interests that have no evident bearing on the judicial proceedings.

## III. If the Court determines the case is moot, the district court's order should be vacated under the *Munsingwear* doctrine.

For the reasons stated in the Company's opposition to Intervenor's motion to dismiss, this case presents a live controversy. *See* Dkt. 10. Although the supplemental disclosure was unsealed on the district court's docket through the erroneous action of district court staff, this Court can still fashion meaningful relief. *Id*. at 7. And, even if it could not, this is a case involving actions that are "capable of repetition, yet evading review." *Id*. at 13.

If, however, the Court determines that this case is moot, the appropriate remedy is to vacate the district court's decision. "When a civil case becomes moot pending appellate adjudication, '[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). This "procedure clears the path for future relitigation of the issues between the parties" and ensures that "the rights of

39

all parties are preserved," with no one "prejudiced by a decision which in the statutory scheme was only preliminary." *Munsingwear*, 340 U.S. at 40. The *Munsingwear* doctrine applies not only to final judgments but to other appealable decisions as well. *E.g.*, *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (applying *Munsingwear* to vacate order directing compliance with pretrial subpoena after defendants pleaded guilty).

In this Circuit, *Munsingwear* vacatur is generally "automatic" whenever a case "become[s] moot while on its way here or pending [the Court's] decision." *Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1461 (9th Cir. 1996) (citation omitted); *see also, e.g.*, *Donovan v. Vance*, 70 F.4th 1167, 1172-73 (9th Cir. 2023). The lone exception is when "mootness is caused by the party seeking vacatur," in which case the Court "typically will remand to the district court to allow it to balance the equities and determine whether it should vacate its own order." *All. for the Wild Rockies v. Savage*, 897 F.3d 1025, 1032 (9th Cir. 2018). On the other hand, "[w]hen mootness is not caused by actions of the party seeking vacatur, [the Court] typically will vacate the district court's order." *Id.*

Here, there is no question that any mootness arose not from the Company's conduct but by district court personnel's erroneous and unilateral action unsealing the previously sealed investor list. That happened before the Company could request a stay or protect their appellate rights in any other way—and well before the stated

40

two-week deadline the Court had set for the Company to file the unredacted statement on the public docket. If there is any mootness in this case, it is a textbook example of mootness "due to happenstance," and in such cases, "the established practice in federal court is to vacate the decision below." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 799 (9th Cir. 1999). Contrary to Intervenor's suggestion in his reply to the motion to dismiss, *see* Dkt. 11, at 9, the fact that the Company "went on to comply with the District Court's order by publicly filing" the supplemental disclosures does not make the Company responsible for any mootness here. The Company had no choice but to comply with the district court order once the court employees' error caused the shareholder list to be published in the *Washington Post*, among other publications, and eliminated the Company's ability to claim irreparable injury and seek a stay. *See, e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1058-59 (9th Cir. 2020). In these circumstances, failing to comply would have put the Company in violation of the district court's order and at risk of being found in contempt. The Court should vacate the district court's unsealing order under *Munsingwear* if it determines that mootness prevents review on the merits.

## CONCLUSION

For these reasons, the Court should (1) reverse the district court's June 3, 2023 order requiring the Company to file a supplemental corporate disclosure statement,

and (2) reverse the district court's August 20, 2024 order granting Intervenor's motion to unseal the supplemental corporate disclosure statement. Alternatively, the Court should vacate the district court's August 20, 2024 order pursuant to the *Munsingwear* doctrine.

Dated: December 13, 2024     Respectfully submitted,

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
T. 202.739.3000

ERIC MECKLEY
BRIAN D. BERRY
MORGAN, LEWIS & BOCKIUS LLP
One Market Street
Spear Street Tower
San Francisco, California
T. 415.442.1000

*Counsel for Appellants*

## STATEMENT OF RELATED CASES

In accordance with Ninth Circuit Rule 28-2.6, I hereby state that, to my knowledge, no related cases are currently pending in this Court.

Dated: December 13, 2024

s/ Michael E. Kenneally

MICHAEL E. KENNEALLY

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-5936

I am the attorney or self-represented party.

**This brief contains 10,057 words,** including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Michael E. Kenneally     **Date** December 13, 2024