No. 24-5936

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

SARAH ANOKE, et al.,

*Plaintiffs-Appellees*,

JACOB SILVERMAN,

*Intervenor-Appellee*,

v.

TWITTER, INC.; X HOLDINGS CORP.; X CORP.;
X HOLDINGS I, INC.; and ELON MUSK,

*Defendants-Appellants*,

_____

On Appeal from the United States District Court for the
Northern District of California
Case No. 3:23-cv-02217 (Hon. Susan Illston)

_____

### ANSWERING BRIEF OF INTERVENOR-APPELLEE
### JACOB SILVERMAN

Grayson Clary
*Counsel of Record for*
  *Intervenor-Appellee*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

Jean-Paul Jassy
Nicholas Hartmann
JASSY VICK CAROLAN, LLP
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION ..................................................5

STATEMENT OF THE ISSUES .......................................................6

STATEMENT OF THE CASE ..........................................................7

STANDARD OF REVIEW ..............................................................13

SUMMARY OF ARGUMENT .........................................................14

I.      Appellants' objections to the District Court's unsealing order are moot because their corporate disclosure statement has already been unsealed. ....15

II.     The District Court did not abuse its discretion in finding that Appellants failed to justify sealing the corporate disclosure statement. .........................23

        A.      The First Amendment presumption of access attaches to corporate disclosure statements. ...........................................................24

        B.      The common law presumption of access attaches to corporate disclosure statements. ...........................................................28

        C.      The District Court did not abuse its discretion in finding that Appellants failed to demonstrate good cause for sealing here............32

III.    Appellants' effort to appeal the District Court's June 2023 order to supplement their disclosure statement is both untimely and meritless. ........40

CONCLUSION ...............................................................................45

CERTIFICATE OF COMPLIANCE ...............................................47

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Al Otro Lado, Inc. v. Wolf*,
No. 17cv2366, 2020 WL 2097598 (S.D. Cal. May 1, 2020) .............................17

*Appl. of Nat'l Broad. Co., Inc.*,
828 F.2d 340 (6th Cir. 1987)..............................................................................27

*Baxter Int'l, Inc. v. Abbott Labs.*,
297 F.3d 544 (7th Cir. 2002)........................................................................36, 38

*Best Odds Corp. v. iBus Media Ltd.*,
No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014) .................29, 38

*Carlyle v. Cicatello*,
No. 1:22-CV-61, 2022 WL 21794410 (M.D. Ga. Nov. 28, 2022)...........2, 29, 38

*Carr v. IF&P Holding Co.*,
No. 22-480, 2024 WL 1675185 (E.D. La. Apr. 18. 2024).................................37

*Civil Beat L. Ctr. for Pub. Int., Inc. v. Maile*,
117 F.4th 1200 (9th Cir. 2024)....................................................................25, 27

*Constand v. Cosby*,
833 F.3d 405 (3d Cir. 2016)............................................................4, 15, 16, 17

*Cosgrove v. Nat'l Fire & Marine Ins. Co.*,
770 F. App'x 793 (9th Cir. 2019) .......................................................................5

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020)..............................................................................25

*Ctr. for Auto Safety v. Chrysler Group*,
809 F.3d 1092 (9th Cir. 2016).................................................................29, 30, 31

*Darton Archery, LLC v. Bowtech, LLC*,
No. C.A. 23-140, 2023 WL 2755760 (D. Del. Apr. 3, 2023) .................2, 29, 36

iii

*Dep't of Fish & Game v. Fed. Subsistence Bd.*,
  62 F.4th 1177 (9th Cir. 2023)................................................................18

*Doe No. 1 v. Reed*,
  697 F.3d 1235 (9th Cir. 2012).....................................................*passim*

*Doe v. Mass. Inst. of Tech.*,
  46 F.4th 61 (1st Cir. 2022) ...............................................................26, 31

*Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*,
  No. 3:22-cv-00237, 2023 WL 4711158 (W.D. Pa. July 24, 2023) ...................25

*EFT Holdings, Inc. v. CTX Virtual Techs., Inc.*,
  No. 15-cv-1597, 2016 WL 11519280 (C.D. Cal. Nov. 3, 2016).......................36

*El Vocero de Puerto Rico v. Puerto Rico*,
  508 U.S. 147 (1993) ...........................................................................28

*Entropic Commc'ns, LLC v. DirecTV, LLC*,
  688 F. Supp. 3d 978 (C.D. Cal. 2023)..............................................43, 44

*Foltz v. State Farm Mut. Auto Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003)........................................................13, 28

*Gambale v. Deutsche Bank AG*,
  377 F.3d 133 (2d Cir. 2004).........................................................16, 22

*Globe Newspaper v. Superior Ct.*,
  457 U.S. 596 (1982) .....................................................................27, 28

*Grosjean v. Am. Press Co.*,
  297 U.S. 233 (1936) ...........................................................................45

*Hagestad v. Tragesser*,
  49 F.3d 1430 (9th Cir. 1995)................................................................34

*Harmston v. City & Cnty. of San Francisco*,
  627 F.3d 1273 (9th Cir. 2010) ............................................................ 29

*Harris v. Wells Fargo Bank, N.A.*,
  No. 16-645, 2016 WL 11486587 (C.D. Cal. July 14, 2016) ...........................43

iv

*In re Copley Press, Inc.*,
    518 F.3d 1022 (9th Cir. 2008).................................................................*passim*

*In re Marriage of Burkle*,
    135 Cal. App. 4th 1045 (2006)...........................................................35

*In re Nimitz Tech. LLC*,
    No. 2023-103, 2022 WL 17494845 (Fed. Cir. Dec. 8, 2022) ...........................43

*In re Roman Cath. Archbishop of Portland*,
    661 F.3d 417 (9th Cir. 2011)...........................................................40

*Islamic Shura Council v. FBI*,
    635 F.3d 1160 (9th Cir. 2011).........................................................3, 14, 16, 18

*June Medical Servs. LLC v. Phillips*,
    22 F.4th 512 (5th Cir. 2022)...........................................................1, 18

*Kamakana v. City & County of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006).........................................................31, 32, 33, 39

*Las Vegas Sands, LLC v. Nehme*,
    632 F.3d 526 (9th Cir. 2011)...........................................................13

*Manssor v. NRRM, LLC*,
    No. EP-23-cv-00236, 2023 WL 4093413 (W.D. Tex. June 20, 2023) .............25

*Mayer v. Patriot Pickle Inc.*,
    No. 23-CV-1299, 2024 WL 162881 (W.D.N.Y. Jan. 16, 2024) ........2, 26, 29, 36

*Milliner v. Mut. Secs. Inc.*,
    No. 15-cv-03354, 2021 WL 2645794 (N.D. Cal. June 28, 2021) .....................33

*NASD Disp. Resol., Inc. v. Jud. Council of Cal.*,
    488 F.3d 1065 (9th Cir. 2007).........................................................22, 23

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) ......................................................................5, 19, 38

*Nome Eskimo Community v. Babbitt*,
    67 F.3d 813 (9th Cir. 1995)...........................................................15

*Ohio A. Phillip Randolph Inst. v. Obhof*,
  802 F. App'x 185 (6th Cir. 2020) ......................................................17

*Oregonian Publ'g Co. v. U.S. Dist. Ct. for Dist. Of Or.*,
  920 F.2d 1462 (9th Cir. 1990)............................................................32

*Overstock.com, Inc. v. Goldman Sachs Group, Inc.*,
  231 Cal. App. 4th 471 (2014)............................................................35

*Packingham v. North Carolina*,
  582 U.S. 98 (2017) ............................................................................15

*Phillips ex rel. Ests. of Byrd v. Gen. Motor Corp.*,
  307 F.3d 1206 (9th Cir. 2002)......................................................*passim*

*Pintos v. Pac. Creditors Ass'n*,
  605 F.3d 665 (9th Cir. 2009)..............................................................29

*Press-Enter. Co. v. Superior Court ("Press-Enterprise II")*,
  478 U.S. 1 (1986) ..............................................................................24

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014)......................................................*passim*

*SBFO Operator No.3 LLC v. Onex Corporation*,
  No. 4:19-cv-03271, 2020 WL 2850249 (E.D. Mo. June 2, 2020) ....................42

*Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*,
  312 F.R.D. 673 (S.D. Ga. 2016)..................................................*passim*

*Terrapin Bus. Funding LLC v. Stellar Beach Rentals, LLC*,
  No. 2:24-cv-2981, 2024 WL 3949980 (E.D.N.Y. Aug. 23, 2024) ..........2, 29, 36

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994) ............................................................................22

*Unabom Trial Media Coal. v. U.S. Dist. Ct.*,
  183 F.3d 949 (9th Cir. 1999).......................................................16, 19

*United States v. Brooklier*,
  685 F.2d 1162 (9th Cir. 1982)............................................................34

*United States v. Bus. of Custer Battlefield Museum & Store*,
  658 F.3d 1188 (9th Cir. 2011)................................................................24

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980) ..............................................................39

*United States v. Sadler*,
  480 F.3d 932 (9th Cir. 2007)...................................................5, 20, 40

*United States v. Sleugh*,
  896 F.3d 1007 (9th Cir. 2018).............................................................30

*Valley Bank of Nev. v. Super. Ct. of San Joaquin Cnty.*,
  15 Cal. 3d 652 (1975)..........................................................................35

*VLSI Tech. LLC v. Intel Corp.*,
  No. 18-966, 2022 WL 3134427 (D. Del. Aug. 1, 2022) ....................43

*Wallingford v. Bonta*,
  82 F.4th 797 (9th Cir. 2023).................................................................21

*Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*,
  No. 2:23-cv-81, 2023 WL 2435806 (M.D. Fla. Feb. 16, 2023).........2, 29, 36, 38

*Wilkins v. Tory Burch, LLC*,
  No. 4:23-cv-422, 2023 WL 3600084 (E.D. Mo. May 23, 2023) .............2, 29, 36

*WSOU Invs., LLC v. Salesforce, Inc.*,
  No. 6:20-cv-1163, 2023 WL 2213200 (D. Del. Feb. 24, 2023).........2, 23, 29, 36

**Statutes:**

28 U.S.C. § 1331 ........................................................................................5

28 U.S.C. § 445 ........................................................................................44

**Other Authorities:**

Ariel Zilber, *X Investors Who Helped Elon Musk Buy Company Include Top
  VC Firms, Saudi Prince, and Jack Dorsey*, N.Y. Post (Aug. 22, 2024) ............11

Associated Press, *Twitter May Be Worth One-Third What Musk Paid for It Last Fall*, NBC 15 News (June 1, 2023) ............................................................ 34

Ben McKenzie & Jacob Silverman, *Easy Money: Cryptocurrency, Casino Capitalism, and the Golden Age of Fraud* (2023) ................................................ 10

Charles Alan Wright et al., 13C Fed. Prac. & Proc. § 3533.3.1 (3d ed. 2008) ............................................... 16

Chloe Veltman, *How Twitter Became One of the World's Preferred Platforms for Sharing Ideas*, KQED (Nov. 22, 2022) ......................................... 7

David Ingram, *Investors in Elon Musk's X Acquisition Revealed in Court Documents*, NBC (Aug. 22, 2024) ...................................................................... 11

Faiz Siddiqui et al., *U.S. Exploring Whether It Has Authority to Review Musk's Twitter Deal*, Wash. Post (Nov. 1, 2022) ................................................. 8

Faiz Siddiqui, *Musk's Twitter Investors Have Lost Billions in Value*, Wash. Post (Sept. 1, 2024) ...................................................................................... 44

Hamza Shaban & Faiz Siddiqui, *Here's Who Helped Elon Musk Buy Twitter*, Wash. Post (Dec. 24, 2022) ............................................................................ 7, 34

Jacob Silverman, *All That Twitters*, The Baffler (Sept. 26, 2024) ......................... 11

Jacob Silverman, *Terms of Service: Social Media and the Price of Constant Connection* (2015) .................................................................................................. 10

Low De Wei & Marika Katanuma, *Twitter Company 'No Longer Exists'; It's Now Part of Musk's X Corp.*, L.A. Times (Apr. 11, 2023) ........................... 7

María Antonia Sánchez-Vallejo, *Under Elon Musk, Twitter Has Approved 83% of Censorship Requests by Authoritarian Governments*, El País (May 24, 2023) ...................................................................................................... 8

Matthew Frankel, *Who Owns X (Formerly Twitter)?*, The Motley Fool (Mar. 21, 2024) ............................................................................................................... 7

Nate Raymond & Moira Warburton, *Congress Approves Tougher Financial Disclosure Rules for U.S. Judges*, Reuters (Apr. 27, 2022) ................................ 26

Patrice Taddonio, *How Saudi Arabia Weaponized Twitter to Target MBS Critics*, PBS (Nov. 7, 2019) ........................................................8

Rebecca Kern, *Musk's Foreign Investors in Twitter Are 'Worthy' of Review, Biden Says*, POLITICO (Nov. 9, 2022) ...............................8

Trisha Thadani, *Elon Musk's X Reveals Investors in Court Filing*, Wash. Post (Aug. 21, 2024) ...............................................................1, 11

Wright & Moore, Fed. Prac. & Proc. § 1197 ....................................41, 43

**Rules:**

9th Cir. R. 27-13.............................................................................18

Fed. R. App. P. 4 .....................................................................20, 40

Fed. R. Civ. P. 7.1 ..........................................................................41

U.S. Dist. Ct. for the Central Dist. of Cal. L.R. 7.1-1 ...........................41

U.S. Dist. Ct. for the Dist. of Mont. L.C.R. 7-1-1 ...............................42

U.S. Dist. Ct. for the Dist. of Nev. L.C.R. 7.1-1 .................................42

U.S. Dist. Ct. for the W. Dist. of Wash. L.C.R. 7-1 .............................42

# INTRODUCTION

"Secrecy is a one-way street:  Once information is published, it cannot be made secret again."  *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008); *see also June Medical Servs. LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (noting that courts can "sanction[] counsel for seeking to seal information that was publicly available").  Refusing to acknowledge as much, Appellants Twitter, Inc., X Holdings Corp., X Corp., X Holdings, I, Inc., and Elon Musk (together, the "X Parties") ask this Court to retroactively seal a judicial record—their corporate disclosure statement—that Appellants already filed on the District Court's public docket, that already appears on this Court's public docket, and that was already published in the *Washington Post*.  *See* Trisha Thadani, *Elon Musk's X Reveals Investors in Court Filing*, Wash. Post (Aug. 21, 2024), https://bit.ly/3BFhDR2.  Gilding the lily, Appellants ask this Court to invalidate along the way a longstanding local rule of the U.S. District Court for the Northern District of California that played no role in the District Court's unsealing order, a rule last applied in this case in a year-old order that Appellants did not timely appeal.

Root and branch, this appeal is frivolous—a transparent bid to tax Intervenor-Appellee Jacob Silverman ("Mr. Silverman"), a journalist who covers the technology industry, with time-wasting proceedings because he successfully moved to unseal a judicial record of substantial public interest.  For the reasons

1

given here, this Court should dismiss the appeal as moot or, in the event it reaches the merits, affirm the District Court's conclusion that Appellants failed to justify sealing their corporate disclosure statement under any plausibly relevant standard.

On the merits, the District Court's fact-sensitive holding was not error, let alone clear error. While this Court has yet to address the question, the overwhelming weight of persuasive authority holds that disclosure statements are presumptively accessible to the public under the First Amendment or, at minimum, the common law.[1] Even Appellants grant that "corporate disclosure statements are generally publicly available on court dockets." Br. of Appellants at 38. And there can be no reasonable dispute that those records play a central role in guaranteeing both the reality and the appearance of judicial integrity because of their central role in evaluating and avoiding conflicts of interest. *See* ER-9. But this Court need not address whether the common law or Constitution demands transparency here,

---

[1]     *See, e.g.*, *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 (S.D. Ga. 2016) (First Amendment presumption); *Terrapin Bus. Funding LLC v. Stellar Beach Rentals, LLC*, No. 2:24-cv-2981, 2024 WL 3949980, at *3 (E.D.N.Y. Aug. 23, 2024) (common law); *Mayer v. Patriot Pickle Inc.*, No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (same); *Wilkins v. Tory Burch, LLC*, No. 4:23-cv-422, 2023 WL 3600084, at *1–2 (E.D. Mo. May 23, 2023) (same); *Darton Archery, LLC v. Bowtech, LLC*, No. C.A. 23-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023) (same); *WSOU Invs., LLC v. Salesforce, Inc.*, No. 6:20-cv-1163, 2023 WL 2213200, at *2 (D. Del. Feb. 24, 2023) (same); *Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*, No. 2:23-cv-81, 2023 WL 2435806, at *1–2 (M.D. Fla. Feb. 16, 2023) (same); *Carlyle v. Cicatello*, No. 1:22-CV-61, 2022 WL 21794410, at *1 (M.D. Ga. Nov. 28, 2022) (same).

because the District Court—spotting Appellants every possible legal issue in their favor—assumed without deciding that the more lenient good-cause standard would apply and still found that Appellants had failed to offer sufficient evidence to clear that lower bar. *See* ER-8. After all, Appellants' proffered justifications for secrecy here would just as well describe every corporate disclosure statement—documents that Appellants concede are routinely filed publicly. Indeed, Appellants only manage to surface a single, unreported decision in which any federal court has ever sealed a disclosure statement—and then only for case-bound reasons that Appellants have never suggested apply here. The District Court did not abuse its discretion in finding that Appellants did not carry their burden to justify sealing.

Even if Appellants could find reason to fault the District Court's holding, though, this Court has no occasion to revisit it because the controversy is no longer live. This Court has held again and again that "a case seeking to keep a document secret is moot once third parties have control over copies of the document." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (quoting *Doe No. 1 v. Reed*, 697 F.3d 1235, 1239 (9th Cir. 2012)); *see also, e.g.*, *Islamic Shura Council v. FBI*, 635 F.3d 1160, 1164 (9th Cir. 2011) (holding that "unsealing cannot be reversed"). Appellants seek a pure advisory opinion, as Mr. Silverman's pending motion to dismiss the appeal explains, *see* Dkt. 8.1 at 1–10, and no exception to mootness plausibly applies. Appellants cannot reasonably

3

expect this Court to address consequential questions of first impression on which the District Court never passed—and invalidate *in toto* another court's local rule in the process—in a proceeding in which they cannot obtain any effective relief.

In practice and principle, this case is over. The District Court correctly unsealed the disclosure statement, and any number of "prominent news organizations"—recognizing the obvious public interest in its contents— "published articles about the documents within hours of the District Court's order." *Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016). For the reasons herein, Mr. Silverman respectfully urges this Court to dismiss this appeal as moot or, in the alternative, to affirm the District Court's order unsealing the disclosure statement.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction to resolve Mr. Silverman's motion to intervene and unseal judicial records under 28 U.S.C. § 1331 and its inherent "supervisory power over its own records." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019) (recognizing that federal courts have jurisdiction to resolve motions to intervene and unseal judicial records in otherwise-closed cases).

As set forth in Mr. Silverman's pending motion to dismiss this appeal as moot, *see* Dkt. 8 at 1–10; Dkt. 11 at 1–14, this Court lacks jurisdiction to consider Appellants' objections to the unsealing order because the document at issue was already unsealed and is available to the public on the District Court's docket, this Court's docket, and numerous other websites, *see Doe No. 1*, 697 F.3d at 1239.

This Court likewise lacks jurisdiction to consider "[w]hether the district court erred in ordering the Company to file a corporate disclosure statement listing the shareholders of X Holdings Corp." in the first place, Br. of Appellants at 5, because that separate order was issued on June 6, 2023, *see* Order Granting Pls.' Administrative Mot. Directing Defs. To Supplement Corporate Disclosure Statement, *Anoke v. Twitter*, No. 3:23-cv-02217 (N.D. Cal. June 6, 2023) (ECF No. 35), and was not timely appealed, *see United States v. Sadler*, 480 F.3d 932, 937 (9th Cir. 2007) (30-day deadline for civil appeal is "mandatory and jurisdictional").

## STATEMENT OF THE ISSUES

1.　　Whether this appeal of the District Court's unsealing order is moot because Appellants' corporate disclosure statement has already been made public.

2.　　Whether the District Court acted within its discretion in finding that Appellants failed to meet their burden to justify sealing their disclosure statement.

3.　　Whether Appellants' objections to the District Court's prior order of June 6, 2023, directing Appellants to supplement their corporate disclosure statement, are time-barred because Appellants did not timely appeal that order.

## STATEMENT OF THE CASE

### I.     Elon Musk's acquisition of Twitter.

The social media network X is a platform for expression worldwide.  *See*
Chloe Veltman, *How Twitter Became One of the World's Preferred Platforms for
Sharing Ideas*, KQED (Nov. 22, 2022), https://perma.cc/A6CT-7FAZ.  "Until
October 2022, X (then known as Twitter) was a publicly traded company," but "[it]
was taken private by billionaire entrepreneur Elon Musk toward the end of that
month, and its name was subsequently changed to X in March 2023."  Matthew
Frankel, *Who Owns X (Formerly Twitter)?*, The Motley Fool (Mar. 21, 2024),
https://perma.cc/HG8U-RY4X.  The transaction was backed by a range of
prominent figures, from Silicon Valley investors to foreign sovereigns, many of
whom publicly confirmed their stakes.  *See* Hamza Shaban & Faiz Siddiqui,
*Here's Who Helped Elon Musk Buy Twitter*, Wash. Post (Dec. 24, 2022),
https://perma.cc/8UHJ-J546.  On April 4, 2023, in filings in unrelated litigation,
the platform disclosed that Twitter had been merged into X Corp., and that X Corp
in turn is wholly owned by a holding company named X Holdings Corp.  *See* Low
De Wei & Marika Katanuma, *Twitter Company 'No Longer Exists'; It's Now Part
of Musk's X Corp.*, L.A. Times (Apr. 11, 2023), https://perma.cc/82SC-S7AP.

The possible influence of X's ownership on the platform's policies and
practices has been a subject of recurring public interest.  The involvement of

foreign investors in the deal, for instance, drew extensive scrutiny from the Executive Branch and from members of Congress.  *See* Faiz Siddiqui et al., *U.S. Exploring Whether It Has Authority to Review Musk's Twitter Deal*, Wash. Post (Nov. 1, 2022), https://perma.cc/4NYC-ETFS; Rebecca Kern, *Musk's Foreign Investors in Twitter Are 'Worthy' of Review, Biden Says*, POLITICO (Nov. 9, 2022),  https://bit.ly/3RFfp9Q.  The participation of the Kingdom of Saudi Arabia's Prince Alaweed bin Talal al Saud, *see* Shaban & Siddiqui, *supra*, prompted particular concern because of the Kingdom's history of infiltrating Twitter to collect users' private information, *see* Patrice Taddonio, *How Saudi Arabia Weaponized Twitter to Target MBS Critics*, PBS (Nov. 7, 2019), https://perma.cc/W274-JPTK.  And news reporting has likewise documented concerns that X Corp.'s financial interests have influenced its willingness to remove content at the request of foreign governments.  *See* María Antonia Sánchez-Vallejo, *Under Elon Musk, Twitter Has Approved 83% of Censorship Requests by Authoritarian Governments*, El País (May 24, 2023), https://perma.cc/PQJ8-CLFA.  For much of Musk's tenure as X's owner, however, the full slate of investors in the initial transaction remained unknown to the public.

## II. Mr. Silverman's motion to intervene and unseal the X Parties' supplemental corporate disclosure statement in *Anoke v. Twitter*.

The underlying proceedings in this matter arise out of an action brought by former employees of X Corp. who alleged violations of their arbitration

agreements with the X Parties. *See* ER-3. After voluntarily removing the action to the U.S. District Court for the Northern District of California, the X Parties filed a corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1 and the Northern District's Local Rule 3-15 that stated that "X Corp. is wholly owned by X Holdings Corp." and that "[n]o publicly held corporation owns 10% or more of X Corp.'s or X Holdings Corp.'s stock," but the statement did not otherwise identify the individuals or entities with a financial interest at stake. *See* ER-60.

On May 11, 2023, the plaintiffs moved the District Court for an order requiring the X Parties to supplement their corporate disclosure statement, pointing out that the X Parties' failure to disclose the owners of X Holdings Corp. failed to comply with Local Rule 3-15's requirement that a statement disclose any individuals or entities with "a financial interest of any kind in the subject matter in controversy or in a party to the proceeding." Pet'rs.' Civ. L.R. 7-11 Admin. Relief Mot. at 1, *Anoke v. Twitter*, No. 3:23-cv-02217 (N.D. Cal. May 11, 2023) (ECF No. 19) (quoting U.S. Dist. Ct. for N.D. Cal. L.R. 3-15). The District Court granted that motion on June 6, 2023. *See* ER-17. The X Parties did not request a stay of that order, appeal the order, or otherwise seek any relief from the order.

On June 9, 2023, the X Parties filed a supplemental disclosure statement that redacted in their entirety the names of the individuals or entities with an ownership interest in X Holdings Corp. seeking leave to maintain that information under seal.

*See* ER-50.  The District Court granted that motion in a summary order that contained no factual findings in support, *see* ER-16, and concluded shortly thereafter that the case should be remanded to California state court, *see* ER-11.

On July 3, 2024, Mr. Silverman—a journalist, contributing editor for *The Baffler* and *The New Republic*, and author of several books about the technology industry[2]—moved to intervene for the limited purpose of unsealing the disclosure statement in connection with his ongoing reporting.  *See* ER-18.  On August 20, 2024, the District Court granted that motion.  *See* ER-3.  As to intervention, the District Court held that permissive intervention was appropriate under Fed. R. Civ. P. 24(b) and that the X Parties would not be prejudiced by being held to their burden to justify sealing the statement.  *See* ER-6–7.  On the merits—without deciding whether the sealing of the statement was governed by a First Amendment, common law, or good-cause standard, *see* ER-8—the District Court held that the X Parties had failed to meet even the most lenient standard, offering "little more than conjecture in support of their position" that the statement should be sealed, ER-8.

In particular, the District Court emphasized that the only evidence the X Parties had proffered in support of sealing was a conclusory assertion that "X Holdings Corp. has a policy of not revealing this information, its investors expect it

---

[2]     *See* Ben McKenzie & Jacob Silverman, *Easy Money: Cryptocurrency, Casino Capitalism, and the Golden Age of Fraud* (2023); Jacob Silverman, *Terms of Service: Social Media and the Price of Constant Connection* (2015).

will not reveal this information, and revealing this information may harm its competitive position in the marketplace." ER-8. The District Court also found that the statement "does not contain any scandalous information or trade secrets," ER-8, that the X Parties had opted into the requirement to make the disclosures as "the ones who invoked federal jurisdiction by removing this action from state court," ER-9, and that the public interest favored unsealing because "[j]udicial conflicts of interest are not matters that can be resolved among the Court and the parties alone; the public has an independent interest in overseeing this process," ER-9.

The District Court ordered the X Parties to "file an unredacted version of the supplemental corporate disclosure statement on the public docket no later than September 4, 2024." ER-10. The Clerk of Court also made the corporate disclosure statement immediately available to the public on the District Court's docket on August 21, 2024. *See* Thadani, *supra.* In addition to Mr. Silverman's own subsequent reporting, *see* Jacob Silverman, *All That Twitters*, The Baffler (Sept. 26, 2024), https://perma.cc/QN83-BJMU (highlighting noteworthy details in the document), the disclosure statement received extensive coverage in other news outlets.[3] As a result, full copies of the document are freely available to the public

---

[3] *See, e.g.*, Thadani, *supra*; Ariel Zilber, *X Investors Who Helped Elon Musk Buy Company Include Top VC Firms, Saudi Prince, and Jack Dorsey*, N.Y. Post (Aug. 22, 2024), https://perma.cc/K24M-7CMU; David Ingram, *Investors in Elon Musk's X Acquisition Revealed in Court Documents*, NBC (Aug. 22, 2024), https://perma.cc/3V7H-PAW3.

on numerous websites.  *See, e.g.*, Resp't's Supplemental Rule 7.1 Corporate

Disclosure Statement (last updated Dec. 21, 2024), https://perma.cc/DX64-DL29,

After the document was unsealed on August 21, the X Parties contacted the

Clerk of Court—*ex parte* and without informing Mr. Silverman's counsel—to urge

that it be resealed.  *See* Dkt 10.1, Ex. B at 1–2.  While it appears the Clerk of Court

fulfilled that request, *see id.*, the X Parties did not seek a stay of the District

Court's order pending appeal and, instead, complied with the District Court's

unsealing order by publicly filing an unredacted copy of the statement on the

District Court's docket on September 4, 2024.  As of the filing of this brief, the

document remains available on the District Court's public docket.  *See* Resp't's

Notice of Submission of Unredacted Suppl. Corporate Disclosure Statement, Ex.

A, *Anoke v. Twitter*, No. 3:23-cv-02217 (N.D. Cal. Sept. 4, 2024) (ECF No. 54).

On September 19, 2024, the X Parties filed their notice of appeal of the

District Court's unsealing order.  *See* ER-61.  On October 8, 2024, Mr. Silverman

moved to dismiss the appeal as moot on the grounds "that a case seeking to keep a

document secret is moot once third parties have control over copies of the

document."  Dkt. 8.1 at 2 (quoting *Protectmarriage.com-Yes on 8*, 752 F.3d at 834

(citation omitted)).  The motions panel referred that motion to this merits panel for

decision.  *See* Dkt. 12.  As a result of the X Parties' appeal, the disclosure

statement is also publicly available as part of the record in this Court.  *See* Dkt. 8.3.

## STANDARD OF REVIEW

The District Court's decision to unseal judicial records is reviewed for abuse of discretion. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130, 1135 (9th Cir. 2003). Where the District Court applied the correct legal standard in doing so, "there is no abuse of discretion unless [its] findings of fact, and its application of those findings of fact to the correct legal standard, are illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## SUMMARY OF ARGUMENT

The most straightforward basis for resolving this appeal is jurisdictional: This case became "moot once the documents were unsealed, because 'the unsealing cannot be reversed.'" *Doe No.1*, 697 F.3d at 1239 (quoting *Islamic Shura Council of S. Cal.*, 635 F.3d at 1164). But even if that were not so, the X Parties' appeal fails on its merits. Appellants' insistence that the District Court abused its discretion by unsealing their corporate disclosure statement—in the teeth of their own admission that "corporate disclosure statements are generally publicly available on court dockets," Br. of Appellants at 38—fails even under the more lenient good-cause standard the District Court applied, to say nothing of the more rigorous common law and First Amendment standards that also require public access to that judicial record. And nothing about Appellants' case—on mootness or the merits—is strengthened by tacking on a late-breaking, far-reaching facial challenge to the Northern District of California's Local Rule 3-15, which was last applied here in a year-old order that the X Parties failed to timely appeal.

This appeal is a transparent bid to tax Mr. Silverman for successfully moving to unseal the disclosure statement. The X Parties' bare desire to keep the statement secret was inadequate in the first instance to overcome the "public interest in disclosure of companies with whom a federal judge may have a conflict of interest," *Steel Erectors, Inc.*, 312 F.R.D. at 675 & n.3, and the public's interest

14

in understanding the ownership of "the modern public square," *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). It provides even less reason to revisit that conclusion now, given that "anyone with an internet connection can easily obtain images of the original document[] online." *Constand*, 833 F.3d at 411 (quoting *Doe No. 1*, 697 F.3d at 1239). Mr. Silverman respectfully urges this Court to dismiss this appeal for lack of jurisdiction or, in the alternative, to affirm.

## ARGUMENT

I.  **Appellants' objections to the District Court's unsealing order are moot because their corporate disclosure statement has already been unsealed.**

As set forth in Mr. Silverman's pending motion to dismiss the appeal, *see* Dkt. 8.1 at 1–10; Reply to Resp. to Mot. to Dismiss, Dkt. 11 at 1–14, an appeal becomes moot—and "the judicial branch loses its power to render a decision on the merits," *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995)— when "no effective relief remains available" to the party seeking it, *Doe No. 1*, 697 F.3d at 1238. This is such a case: The prospect that "resealing [the document] would prevent the Clerk of the District Court from continuing to provide official copies," *Constand*, 833 F.3d at 410, provides no relief when "anyone with an internet connection can easily obtain images of the original document[] online," *id.* at 411 (quoting *Doe No. 1*, 697 F.3d at 1239). No exception to mootness applies, moreover, because the "case-specific" question whether the X Parties supplied an adequate factual basis for sealing *this* document is not likely to recur, nor does it

15

fall within the class of questions that would evade review if it did crop up again. *Unabom Trial Media Coal. v. U.S. Dist. Ct.*, 183 F.3d 949, 951–52 (9th Cir. 1999). With no live controversy left, this Court should dismiss for lack of jurisdiction.

A.     This appeal is moot because the document was already made public.

This Court has reaffirmed again and again the "commonsense conclusion that once a fact is widely available to the public, a court cannot grant any 'effective relief' to a person seeking to keep that fact a secret." *Doe No. 1*, 697 F.3d at 1240; *see also Protectmarriage.com-Yes on 8*, 752 F.3d at 834; *Islamic Shura Council*, 635 F.3d at 1164; *In re Copley Press*, 518 F.3d at 1025. Every circuit follows that same rule that "appeals seeking to restrain 'further dissemination of publicly disclosed information' are moot," *Constand*, 833 F.3d at 410 (collecting cases and quoting Charles Alan Wright et al., 13C Fed. Prac. & Proc. § 3533.3.1 & n.35 (3d ed. 2008)), including in the specific context of documents that were erroneously made available to the public, *see id.* at 411; *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (appellate court "[did] not have the power," even where district court's unsealed reference to confidential information "was a serious abuse of discretion," to order that the information be redacted from a judicial record that had already been "disseminated prominently elsewhere"). In

the face of that mountain of authority, including the binding precedent of this Circuit, the X Parties have not surfaced a single case that concludes otherwise.[4]

The practical facts of this appeal underline the point. For months now, the corporate disclosure statement has been available to "anyone with an internet connection," *Doe No. 1*, 697 F.3d at 1239, via any number of "prominent news organizations," *Constand*, 833 F.3d at 410; *see* Br. for Appellants at 41 (acknowledging that the shareholder list has been "published in the *Washington Post*, among other publications"). For months now, the corporate disclosure statement has been "publicly accessible on the district court's online docket." *Ohio A. Phillip Randolph Inst. v. Obhof*, 802 F. App'x 185, 186 (6th Cir. 2020). And for months now, too, as a result of this appeal, the corporate disclosure statement has been available on "the Ninth Circuit docket, which generally moots any later attempt to seal the document[] from public view." *Al Otro Lado, Inc. v. Wolf*, No. 17-cv-2366, 2020 WL 2097598, at *5 (S.D. Cal. May 1, 2020). Indeed, even as the X Parties ask this Court to order the statement resealed on the District Court's docket, they have not made even a *pro forma* request that this Court seal

---

[4]    As discussed in Mr. Silverman's reply in support of his motion to dismiss, every case the X Parties cite with a creative "Cf." in resisting mootness deals with a case in which "a court can grant some effective relief with an order directed *at the parties appearing before it*," rather than one in which records were "released to [a] third-party." *Doe No. 1*, 697 F.3d at 1239 (emphasis added); *see* Dkt. 11 at 4–5 & n.2. Here, the X Parties' claimed injuries all flow from the document's availability to the public, not a party opponent, which resealing cannot remedy.

17

the copy on its own docket. *See* 9th Cir. R. 27-13(a) ("[E]very document filed in or by this Court (*whether or not the document was sealed in the district court*) is in the public record unless this Court orders it to be sealed." (emphasis added)). Had they made such a request, of course, the X Parties would have run the risk of this Court "sanctioning counsel for seeking to seal information that was publicly available." *June Medical Servs., LLC*, 22 F.4th at 521. But their failure to do so only underlines that their sought-after disposition is pointless; it provides no relief. Because there is nothing the X Parties can ask this Court to do that would make the statement secret again, this case was moot before the notice of appeal was filed.[5]

B.   No exception to mootness applies.

No exception to mootness can rescue this appeal from the obvious conclusion that "unsealing cannot be reversed." *Islamic Shura Council*, 635 F.3d at 1164. As the party insisting that subject matter jurisdiction is proper, Appellants bear the burden of establishing that this otherwise-moot case is capable of repetition, yet evading review. *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1181 (9th Cir. 2023). The X Parties fail to satisfy either prong.

---

[5]   Appellants have not challenged—and have therefore forfeited any challenge to—the portion of the District Court's order granting Mr. Silverman intervenor status solely for the limited purpose of moving to unseal the disclosure statement. But even if they had, that status has no remaining legal consequences now that the statement has been unsealed; anything this Court might otherwise have been inclined to say about that issue "cannot affect the rights of litigants in the case before [it]." *Protectmarriage.com-Yes on 8*, 752 F.3d at 834 (citation omitted).

For one, where a party "challenges only the sufficiency of the district court's factual findings" in connection with a motion to seal or unseal, they must show that "essentially the same factual circumstances" will recur—not just that they might, someday, dispute the unsealing of a different document. *Unabom Trial Media Coal.*, 183 F.3d at 951–52. And for good reason: The decision whether to unseal judicial records always turns on "the relevant facts and circumstances of the particular case" rather than broad generalities. *Nixon*, 435 U.S. at 589. Here, the District Court assumed every legal issue in the X Parties' favor but concluded, narrowly, that they failed to offer an adequate "factual basis for sealing" this particular document. ER-9. And because the X Parties cannot—consistent with their burden to make a particularized factual showing to justify sealing judicial records—simply copy-paste future motions to seal future corporate disclosure statements that contain different information, that issue is not likely to recur.

Nor is the issue likely to evade review if it were to recur. "[T]he 'capable of repetition, yet evading review' exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review." *Protectmarriage.com-Yes on 8*, 752 F.3d at 836 (quoting *Doe No. 1*, 697 F.3d at 1240–41)). But the X Parties' own theory of this case is that they could have obtained a stay pending appeal if not for the Clerk of Court's public disclosure of the document on August 21. *See* Appellants' Resp. to Mot. to

Dismiss, Dkt. 10 at 13–14. If that is so, "there is no inherent limit on the duration of such controversies," *Protectmarriage.com-Yes on 8*, 752 F.3d at 837—a stay could protect appellate jurisdiction in future cases, *see id.*, and "[w]hether a party actually obtains such an order in a particular case does not affect [this Court's] jurisdictional inquiry." *Id.* Nothing about the unsealing issue presented in this case is systematically likely to evade review, even if it were in fact to recur.

Finally, while the X Parties are keen to litigate "[w]hether the district court erred in ordering the Company to file a corporate disclosure statement listing the shareholders of X Holdings Corp.," Br. of Appellants at 5, that issue is not properly before this Court. The order requiring that filing was issued on June 6, 2023. *See* Order, *Anoke v. Twitter, Inc.*, No. 3:23-cv-02217 (N.D. Cal. June 6, 2023) (ECF No. 35). At no point did the X Parties attempt to appeal it, either as a collateral order or after the District Court's June 27, 2023 decision to remand the action. *See Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273, 1277–81 (9th Cir. 2010) (remand order is a final judgment for purposes of appealability of earlier rulings). Nor did the X Parties seek a stay of the order from either this Court or the District Court, seek relief by way of a petition for a writ of mandamus, or exercise any other avenue available to review it. On any account of when the clock began to run, this attempt to appeal the June 6, 2023 order comes months too late. Indeed, despite dedicating the lion's share of their brief to challenging the

20

June 2023 order, Appellants' notice of appeal failed to designate it as an order

appealed from, *see* Notice of Appeal, *Anoke v. Twitter*, Inc., No. 3:23-cv-02217

(N.D. Cal. Sept. 19, 2024) (ECF No. 55) (listing "08/20/2024" as the date of the

order appealed), likely because doing so would have drawn attention to the fact

that their objections here are wildly untimely, *see* Br. for Appellants at 5 ("The

appeal is timely because it was filed within 30 days of the order on appeal.").

Even setting that jurisdictional bar aside, Appellants' objections to the

District Court's interpretation of its own local rules are not likely to evade review

on their own terms. Appellants identify no obstacle to appealing from an order to

supplement their corporate disclosure statement in the future if the issue arises

again—no inherent limit on the duration of such a dispute—and their failure to

seek any relief from the 2023 order in this case appears to have been wholly their

own litigation decision. *See Wallingford v. Bonta*, 82 F.4th 797, 802 (9th Cir.

2023) (capable-of-repetition exception does not apply "to situations where the

failure of parties to take certain actions has precluded review" (citation omitted)).

But even *if* that issue were not moot (and an appeal not untimely), it would

not revive the unrelated question whether the District Court properly granted Mr.

Silverman's motion to intervene and unseal a year later. It is utterly ordinary for

motions to unseal to deal with information that one party believes should not have

entered the trial record, whether because their motion to suppress was denied, an

21

evidentiary ruling did not go their way, or discovery material that they wish had not been compelled is later attached to a substantive motion. But no one thinks the merits of the subsequent motion to unseal turns on a full-blown relitigation of every upstream ruling, *see Gambale*, 377 F.3d at 144 (rejecting bid to redact information from judicial opinion even where it was "a serious abuse of discretion" for the district court to include it in the first place), or else every unsealing appeal would become a sprawling collateral attack on the district court's trial management. Appellants do not cite a single case supporting that bizarre result.

This appeal is moot, and this Court should dismiss it.

C.    <u>Appellants have not carried their burden to justify vacatur.</u>

As a fallback, the X Parties ask that the District Court's opinion be vacated as moot. Even if it were, of course, "the opinion of the district court will not be ripped from Federal Supplement 2d," and it "will still be citable for its persuasive weight," which is "all the weight a district court opinion carries anyway." *NASD Disp. Resol., Inc. v. Jud. Council of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007). But in any event, vacatur when a case becomes moot is "an 'extraordinary remedy,' one only available to appellants who 'demonstrate . . . equitable entitlement' to it." *Id.* (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994)). That leaves the X Parties in the awkward position of urging both that their appeal is live and simultaneously that there can be "no question" that it was

22

mooted by the immediate unsealing of the disclosure statement. Br. for Appellants at 40. But the question whether an allegedly inadvertent disclosure, standing alone, would suffice to moot this case is not presented here, because the X Parties went on to comply with the District Court's order—rather than seek a stay pending appeal—by publicly filing the same document they now ask this Court to reseal. And vacatur is always unwarranted where "the *party seeking appellate relief* fails to protect itself." *NASD Disp. Resol., Inc.*, 488 F.3d at 1069 (citation omitted).

Finally, and just as fundamentally, "the public interest" counsels against vacatur. *Id.* As discussed immediately below, the District Court's decision is a well-reasoned rebuke of the X Parties' insistence on sealing what every other litigant in the federal courts must make public—information necessary to uphold both the appearance and reality of judicial integrity. The X Parties have failed to carry their burden of demonstrating equitable entitlement to vacatur of that order.

## II. The District Court did not abuse its discretion in finding that Appellants failed to justify sealing the corporate disclosure statement.

Even looking past the appeal's jurisdictional defects, Appellants have identified no error—let alone an abuse of discretion—in the District Court's decision to unseal their corporate disclosure statement. Whether this Court approaches the analysis through the First Amendment, the common law, or the good-cause standard, the result is the same: "Public disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute

23

an injury" under any standard of review, *WSOU Invs., LLC*, 2023 WL 2213200, at

*2, and the X Parties' bare preference for secrecy does not trump the "public

interest in disclosure of companies with whom a federal judge may have a conflict

of interest," *Steel Erectors, Inc.*, 312 F.R.D. at 675 n.3. The District Court did not

abuse its discretion in finding that Appellants failed to carry their burden here.

A.   The First Amendment presumption of access attaches to corporate
<u>disclosure statements.</u>

In this Circuit, "[t]he law recognizes two qualified rights of access to judicial

proceedings and records, a common law right 'to inspect and copy public records

and documents, including judicial records and documents,' and a 'First

Amendment right of access'" to certain judicial proceedings and documents.

*United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192

(9th Cir. 2011) (first quoting *Nixon*, 435 U.S. at 597; then quoting *Press-Enter. Co.*

*v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 8 (1986)). Both

presumptions of access attach to corporate disclosure statements, but the

constitutional analysis is especially straightforward in this case. *See In re Copley*

*Press*, 518 F.3d at 1026 ("first consider[ing] whether the First Amendment gives

the public a right to access these documents" where that test gives clear guidance).

The analysis whether the First Amendment presumption attaches to a class

of records looks to the complementary considerations of "experience and logic"—

that is, "whether the place and process have historically been open to the press and

general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8, 9. As this Court has often explained, "[w]here access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows," and "only where access has traditionally not been granted [do] we look to logic." *In re Copley Press*, 518 F.3d at 1026 n.2. This Court has "already found the experience and logic test met for most criminal and civil proceedings." *Civil Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1209 (9th Cir. 2024); *see also id.* at 1208 (same with respect to judicial records in civil and criminal cases).[6]

Here, Appellants concede that the experience prong is satisfied, acknowledging that "corporate disclosure statements are generally publicly available on court dockets." Br. of Appellants at 38; *accord Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*, No. 3:22-cv-00237, 2023 WL 4711158, at *3 (W.D. Pa. July 24, 2023) (sealing of corporate disclosure statements is "narrow

---

[6] Appellants' brief advances the mystifying contention that "a court within the Northern District of California has questioned whether the First Amendment standard even applies to access to civil proceedings." Br. for Appellants at 38. As Mr. Silverman explained before the District Court—where Appellants made the same claim—this Court has squarely held otherwise. *See* Reply in Supp. of Mot. of Non-Party Jacob Silverman to Intervene & Unseal Jud. Recs. at 6 & n.4, *Anoke v. Twitter*, 3:23-cv-02217 (N.D. Cal. Aug. 2, 2024) (ECF No. 52) (citing *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020)). That Appellants would repeat the argument, with full notice that binding precedent forecloses it, is inexplicable.

exception" to norm of access); *see also, e.g.*, *Manssor v. NRRM, LLC*, No. EP-23-cv-00236, 2023 WL 4093413, at *2 (W.D. Tex. June 20, 2023) (corporate disclosure statements can only be sealed in "limited circumstances"). That concession concludes the analysis whether the First Amendment presumption attaches under this Court's caselaw. *See In re Copley Press*, 518 F.3d at 1026 n.2.

Logic, in any event, would lead to the same result. "[T]he corporate disclosure form is required so that the court can evaluate issues of jurisdiction and recusal—issues that are central to the performance of the judicial function[.]" *Mayer*, 2024 WL 162881 at *5 (internal citation omitted). Because of that core relationship to judicial integrity, these disclosures implicate "matters of utmost public concern" at the heart of the public's right to supervise and understand the judicial process. *Steel Erectors, Inc.*, 312 F.R.D. at 675 n.3 (internal citation omitted). Other courts of appeals have forthrightly recognized, in closely related contexts, the "contribution to governance of investigative reporting" that exposes "judicial conflicts of interest." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68–69 (1st Cir. 2022) (internal citation omitted). And just three years ago, an investigation by the *Wall Street Journal* relied on corporate disclosure statements to surface nearly 700 cases in which more than 100 federal judges had improperly failed to recuse—prompting a wave of vacated rulings, reforms from the Judicial Conference, and bipartisan legislation. *See* Nate Raymond & Moira Warburton, *Congress Approves*

26

*Tougher Financial Disclosure Rules for U.S. Judges*, Reuters (Apr. 27, 2022),

https://bit.ly/4c5ABNr.  Appellants' insistence that the public should simply trust

the court to determine in secret whether a conflict exists, *see* Br. for Appellants at

38–39, is difficult to understand as anything other than a quarrel with the basic

logic of the right of access, *contra, e.g.*, *Appl. of Nat'l Broad. Co., Inc.*, 828 F.2d

340, 345 (6th Cir. 1987) (logic favors access to disqualification proceedings

because "[w]hen a judge's impartiality is questioned it strengthens the judicial

process for the public to be informed of how the issue is approached and decided").

Without experience or logic to stand on, Appellants lean on a non-sequitur,

arguing that "[a]lthough corporate disclosure statements are generally publicly

available on court dockets, the information regarding the identities of privately

held companies' shareholders is not."  Br. for Appellants at 38.  That attempt to

conflate the two stages of the right-of-access inquiry is precisely the gambit this

Court recently rejected in *Civil Beat Law Center for Public Interest, Inc. v. Maile*,

117 F.4th 1200 (9th Cir. 2024).  There, Hawaii maintained that, whatever the First

Amendment might say about particular judicial proceedings or records, there was

no tradition of access to "medical or health records" incorporated into those

proceedings or records.  *Id.* at 1209.  But this Court rejected that "narrow focus" as

"not correct," *id.* (citation omitted)—a civil complaint that incorporates medical

information is still a civil complaint, *see id.* at 1210, and a post-trial motion that

incorporates medical information is still a post-trial motion, *see id.*; *see also, e.g.*, *Globe Newspaper v. Superior Ct.*, 457 U.S. 596, 605 n.13 (1982) ("[w]hether the First Amendment right of access to criminal trials can be restricted in the context of any particular criminal trial . . . depends not on the historical openness of that type of criminal trial but rather on the state interests assertedly supporting the restriction"). In other words, the X Parties can attempt to show that the particular information in this disclosure statement is especially sensitive when arguing the constitutional presumption of access is *overcome*, but the case-specific contents of this statement do not control whether the presumption attaches to disclosure statements in the first place. *See El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (per curiam) (experience inquiry looks to "the experience in that *type* or *kind* of hearing throughout the United States" (citation omitted)).

Both experience and logic—either one of them sufficient to establish a First Amendment presumption of access under this Court's precedent—ground a presumption of access to disclosure statements "as a general matter." *Globe Newspaper*, 457 U.S. at 605 n.13. Appellants cannot avoid confronting it here.

B.     The common law presumption of access attaches to corporate disclosure statements.

The common law both reinforces the First Amendment conclusion and affords a separate basis for presuming public access to disclosure statements. The common law guarantees "a strong presumption in favor of access to court records,"

28

*Foltz*, 331 F.3d at 1135, one that attaches to any record "more than tangentially related to the merits of a case," *Ctr. for Auto Safety v. Chrysler Group*, 809 F.3d 1092, 1101 (9th Cir. 2016); *see Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2009) (common law presumption "applies to most judicial records"). Disclosure statements easily clear that bar because of their necessity, as discussed above, to "evaluat[ing] issues of jurisdiction and recusal—issues that are central to the performance of the judicial function." *Mayer*, 2024 WL 162881 at *5 (internal citation omitted). It should be no wonder, then, that a raft of federal courts have recognized a common law presumption of access to such statements. *See id.* (collecting cases); *see also, e.g.*, *Terrapin Bus. Funding LLC*, 2024 WL 3949980, at *3; *Wilkins*, 2023 WL 3600084, at *1–2; *Darton Archery, LLC*, 2023 WL 2755760, at *1; *WSOU Invs., LLC*, 2023 WL 2213200, at *2; *Wiens Cap. Mgmt., LLC*, 2023 WL 2435806, at *1–2; *Carlyle*, 2022 WL 21794410, at *1.

Throughout this litigation, in opposing application of the common law presumption, Appellants have leaned entirely on *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014)—the only case the X Parties have surfaced in which any federal court has sealed a corporate disclosure statement. The entirety of the analysis on the question whether the common law presumption attached in *Best Odds* is this sentence: "iBus Media Limited's motion is non-dispositive." *Id.* at *2. But this Court has since rejected

29

that "mechanical" distinction between "dispositive" and "nondispositive" records for purposes of determining whether the presumption applies. *See Ctr. for Auto Safety*, 809 F.3d at 1098. As that decision explains, "[m]ost litigation is not literally 'dispositive,' but nevertheless involves important issues and information to which our case law demands the public should have access." *Id.* To vindicate that public interest, this Court recognizes a common law presumption of access to any record "more than tangentially related to the merits of the case," *id.* at 1102, with a narrow "exception" for "sealed materials attached to a *discovery* motion unrelated to the merits of a case," *id.* at 1097 (citation omitted) (emphasis added). Appellants cite no precedential case in which this Court has extended that exception beyond the discovery context,[7] and Appellants themselves insist disclosure statements "are not meant to be used as discovery tools," Br. for Appellants at 25 (citation omitted). On the contrary, because of their necessity to judging recusal, they represent the gateway to a judge's power to entertain the case at all. That role is much more than "tangentially related to the merits of the case" *Ctr. for Auto Safety*, 809 F.3d at 1102, and the common law presumption attaches.

---

[7]     *See United States v. Sleugh*, 896 F.3d 1007, 1014–15 (9th Cir. 2018) (third-party discovery devices in a criminal case); *Phillips ex rel. Ests. of Byrd v. Gen. Motor Corp.*, 307 F.3d 1206, 1209 (9th Cir. 2002) ("discovery-sanctions motion"); *Foltz*, 331 F.3d at 1130 (documents "produced during discovery under the blanket protective order and never filed with the court").

As a final objection to the application of the common law presumption of access here, Appellants warn that litigants will file meritless suits solely to force defendants to publicly file corporate disclosure statements. *See* Br. for Appellants at 35. On its own terms, that slippery-slope warning makes no sense in light of Appellants' concession that "corporate disclosure statements are generally publicly available on court dockets" already. Br. of Appellants at 38. But regardless, this Court already turned away the same argument in *Center for Auto Safety*: If litigants "file more 'meritless motions'" in order to improperly place information in the judicial record, the appropriate remedy is that "[d]istrict courts can use Rule 11 to impose sanctions." 809 F.3d at 1102. But the slender prospect of litigation misconduct does not justify abridging the public's right to understand the judicial process in the other 99% of cases prophylactically. Here, Appellants have never argued—and would have no basis to argue—that Mr. Silverman's motion had anything other than a legitimate journalistic purpose, as the wave of news reporting that followed the unsealing makes manifest. Neither is there anything nefarious about press and public access to corporate disclosure statements in general: On the contrary, it makes possible the "contribution to governance of investigative reporting" that exposes "judicial conflicts of interest." *Doe*, 46 F.4th at 68–69. That is precisely the sort of "public interest in understanding the judicial process"

that the common law presumption of access is intended to protect. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (citation omitted).

C.   The District Court did not abuse its discretion in finding that Appellants failed to demonstrate good cause for sealing here.

Where the First Amendment presumption attaches to a judicial record, it may be overcome only if—and only to the extent that—"(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Publ'g Co. v. U.S. Dist. Ct. for Dist. Of Or.*, 920 F.2d 1462, 1466 (9th Cir. 1990). Parties can overcome the "strong" common law presumption, for its part, only with "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (citations omitted). And even a good-cause analysis would require the X Parties to "bear[] the burden of showing specific prejudice or harm," *Phillips*, 307 F.3d at 1210–11, after which this Court would still need to "balance[] the public and private interests" at stake, *id.* at 1211. The District Court did not abuse its discretion in concluding that Appellants failed to show good cause sufficient to outweigh the public interest here—let alone meet the First Amendment or common law's stricter tests.

As a threshold matter, Appellants maintain that the District Court necessarily abused its discretion by granting Mr. Silverman's motion in light of its earlier

decision—reflected in a summary order that contained no legal reasoning and no factual findings—to grant the X Parties' motion to seal. The objection badly misunderstands this Circuit's precedent on the sealing of judicial records. At the risk of stating the obvious, a motion to unseal always comes after a decision to seal in the first instance. But in *Kamakana*, this Court squarely rejected the argument that a district court is "bound by the law of the case" by a prior determination that good cause existed to seal a document. 447 F.3d at 1185–86. "To the contrary, we embrace the judge's decision to carefully review every document," especially "in light of the . . . somewhat tepid and general justifications offered for sealing the documents." *Id.* a 1186. As a result, as the District Court correctly observed in the decision under review, it is utterly "routine[]" for district courts to revisit a sealing order when a non-party intervenes to present a more detailed case for public access, ER-7 n.4, with no thumb on the scale for the old result, *see Milliner v. Mut. Secs. Inc.*, No. 15-cv-03354, 2021 WL 2645794, at *3 (N.D. Cal. June 28, 2021) (a motion to intervene and unseal is not an "improper motion for reconsideration"). The burden rests with the proponent of sealing to defend "continued secrecy," *Kamakana*, 447 F.3d at 1178, and the X Parties could not have legitimately assumed that the District Court's initial order entitled them to permanent secrecy.[8]

---

[8]    The point is especially clear because the original order could not have survived an appeal; the failure to make factual findings in support of sealing would have necessarily required reversal if plaintiffs had decided to seek further review.

Neither did the District Court abuse its discretion in finding that Appellants failed to offer "a factual basis for sealing" sufficient to establish good cause, ER-9, let alone compelling reasons or compelling interests for purposes of the common law and First Amendment. At every stage of these proceedings, the X Parties have reiterated the same conclusory claims that the investors in X Holdings Corp. expected privacy, some of them as a result of contracts, and that those interests are protected by the California Constitution. *See* Br. for Appellants at 33–35. None of Appellants' proffered justifications meet their burden under any relevant standard.

For one, the representation that "[i]ndividuals and entities investing and taking an ownership interest in a private corporation such as X Holdings Corp. expect that such information will remain private" is simply false on this record. Br. for Appellants at 34. Many of the investors identified in the unsealed disclosure statement had already disclosed their stakes—including in mandatory filings with the Securities & Exchange Commission. *See, e.g.*, Associated Press, *Twitter May Be Worth One-Third What Musk Paid for It Last Fall*, NBC 15 News (June 1, 2023), bit.ly/3PeRUm4 (noting that Fidelity Investments' ownership interest was disclosed in SEC filings); *see also* Shaban & Siddiqui, *supra* (collecting investors whose interest was public as of December 2022). The District

---

*See Phillips*, 307 F.3d at 1212 (so holding under the good-cause standard); *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (common law); *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir. 1982) (First Amendment).

Court was not required to credit the X Parties' self-serving representation, contradicted by facts before the Court, that their investors expected privacy.

But even if such a subjective expectation of privacy existed, it would not provide good cause (let alone compelling reasons) to justify sealing the disclosure statement. Start with the California Constitution—Appellants' most sweeping argument, which on its face would require the sealing of every corporate disclosure statement filed in the federal district courts in that state. As California's own courts have explained, the financial-privacy right recognized in *Valley Bank of Nev. v. Super. Ct. of San Joaquin Cnty.*, 15 Cal. 3d 652 (1975), dealt with "civil *discovery* proceedings," *Overstock.com, Inc. v. Goldman Sachs Group, Inc.*, 231 Cal. App. 4th 471, 503 (2014), and "does not mean that parties who come to court, voluntarily or not, are entitled to privacy in respect of court records that are . . . presumptively public records," *In re Marriage of Burkle*, 135 Cal. App. 4th 1045, 1063 (2006). On that footing, the burden remains with the proponent of sealing to explain *how* disclosure of particular financial information would cause some specific cognizable harm, such as "identity theft or other crimes relating to the misuse of personal financial information." *In re Marriage of Burkle*, 135 Cal. App. 4th at 1064. And just as importantly, none of Appellants' cited cases dealt with corporate ownership information. For good reason: As Appellants' own cited authorities explain, *see* Br. for Appellants at 34 (citing *EFT Holdings, Inc. v. CTX*

35

*Virtual Techs., Inc.*, No. 15-cv-1597, 2016 WL 11519280, at *3 (C.D. Cal. Nov. 3, 2016)), "California courts have found that corporations do not have a right to privacy under Article I, Section 1 of the California Constitution," *EFT Holdings, Inc.*, 2016 WL 11519280, at *3. And in this case, hardly any of the investors in X Holdings Corp. that were revealed in this disclosure statement are natural persons.

More broadly, Appellants have not cited a single case—California or otherwise—finding that financial privacy interests justify sealing a corporate disclosure statement under any standard of review. On the contrary, a raft of federal courts have refused to do so because "[p]ublic disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute an injury." *WSOU Invs., LLC*, 2023 WL 2213200, at *2; *see also, e.g.*, *Darton Archery, LLC*, 2023 WL 2755760, at *1; *Mayer*, 2024 WL 162881 at *5; *Terrapin Bus. Funding LLC*, 2024 WL 3949980, at *3; *Wilkins*, 2023 WL 3600084, at *1–2; *WSOU Invs., LLC*, 2023 WL 2213200, at *2; *Wiens Cap. Mgmt., LLC*, 2023 WL 2435806, at *1–2. Simply calling that information confidential doesn't make it so. Or as Judge Easterbrook aptly put it in dealing with another party's "bald assertion that confidentiality promotes their business interests," *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002), "How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained," *id.* Here, the declaration submitted by the X Parties was so generic

that it could have been submitted in support of sealing any corporate disclosure statement; that is, by definition, not "specific prejudice." *Phillips*, 307 F.3d at 1210–11. And even though the disclosure statement has now been public for months, the X Parties—as a second court recently pointed out in refusing to seal the X Parties' disclosure statement in a separate case—have pointed to no harm that resulted. *See* Order Denying Defs.' Mot. to Seal at 8, *McMillian v. Musk*, No. 23-cv-03461 (N.D. Cal. Dec. 17, 2024), https://perma.cc/4VJM-ATLL.

That the X Parties may have promised some investors privacy by contract does nothing to move the ball forward. For one, Appellants never submitted any evidence as to which investors have such contracts or what their terms might be. But "[t]he mere invocation of alleged contractual restrictions, without any particularized showing regarding the restrictions (e.g., copies of the contract, the precise restrictions, any exceptions, any alternative avenues to obtain relief, any penalties or consequences for violation), is patently insufficient to carry their burden to establish 'substantial interests in privacy.'" *Carr v. IF&P Holding Co.*, No. 22-480, 2024 WL 1675185, at *6 (E.D. La. Apr. 18. 2024). More fundamentally, as the District Court rightly pointed out, the X Parties themselves opted to put their investors at issue by removing the action to federal court. *See* ER-9; *see Wiens Capital Mgmt.*, 2023 WL 2435806, at *2 (plaintiffs "who chose to initiate suit in federal court," knowing the disclosures that would be required,

37

could not claim a privacy interest in avoiding them). On that footing, "[t]he right judicial response to the initiation of litigation that reveals information subject to contractual confidentiality is not specific performance of the confidentiality agreement but damages for breach of contract." *Baxter Int'l, Inc.*, 297 F.3d at 548.

That leaves the X Parties with a single case in which any federal court has ever sealed a corporate disclosure statement: *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014), on which they again place all their weight. But even setting aside the fact that *Best Odds* has been overtaken by *Center for Auto Safety*, the statement in that case was sealed "as a prophylactic against potential litigation abuses that will needlessly increase the cost of litigation." *Id.* at *3; *see also id.* at *1 (noting the plaintiff had "a history of filing baseless 'strike' suits" and had allegedly filed the case solely "to discover the identity of Defendants' parent corporations in order to create additional leverage"). Here, Appellants have never argued here that Mr. Silverman moved to unseal their disclosure statement for "improper purposes," *Nixon*, 435 U.S. at 598, so *Best Odds* has nothing to say about the good-cause showing Appellants actually made.

Finally, it bears underlining that even a *prima facie* showing that the X Parties have some cognizable interests at stake would not justify sealing; every standard of review requires Appellants to demonstrate that their interests "outweigh" the interests of the public. *Kamakana*, 447 F.3d at 1178 (common

38

law); *see also Phillips*, 307 F.3d at 1211 (good cause requires "balanc[ing] the public and private interests" at stake). But Appellants have not explained "why [their] business interests outweigh the public interest in disclosure of companies with whom a federal judge may have a conflict of interest." *Steel Erectors, Inc.*, 312 F.R.D. at 675. On the contrary, Appellants simply dispute that the public has any interest at all in the ability to evaluate potential conflicts issues. *See* Br. for Appellants at 39 (arguing that the statement "is not provided for the public's benefit"). That position cannot be reconciled with the most fundamental promise of public access to judicial records—that it will "serve[] the important function[] of ensuring the integrity of judicial proceedings." *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980). As the District Court correctly held, "[j]udicial conflicts of interest are not matters that can be resolved among the Court and the parties alone; the public has an independent interest in overseeing this process." ER-9.[9] The District Court did not abuse its discretion in finding that Appellants failed to provide any adequate justification for sealing their disclosure statement.

---

[9] Appellants also dispute whether the analysis should weigh any public interests advanced by transparency that are not "disqualification-related." Br. for Appellants at 36. The point is academic because the District Court did not rely on any such interests in its analysis. *See* ER-9. But this Circuit's law is clear that the analysis does, in fact, take account of public interests that stretch beyond the four corners of the particular proceeding. *See, e.g.*, *In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 428 (9th Cir. 2011) (in Catholic archdiocese's bankruptcy proceeding, good-cause analysis of whether to unseal personnel files produced in discovery should also weigh "weighty interest in public safety and in knowing who

### III. Appellants' effort to appeal the District Court's June 2023 order to supplement their disclosure statement is both untimely and meritless.

Remarkably, Appellants direct most of their brief at an issue not discussed anywhere in the order they appealed from: "[w]hether the district court erred in ordering the Company to file a corporate disclosure statement listing the shareholders of X Holdings Corp." in the first place. Br. of Appellants at 5. As discussed above in connection with mootness, the order requiring that filing was issued on June 6, 2023, *see* Order, *Anoke v. Twitter, Inc.*, No. 3:23-cv-02217 (N.D. Cal. June 6, 2023) (ECF No. 35), and the X Parties failed to timely appeal it, *see* Fed. R. App. P. 4(a); *Sadler*, 480 F.3d at 937 (holding that Rule 4(a)'s time limit is "both mandatory and jurisdictional"). And the notion that this Court "should reverse the unsealing order because it was *premised* on an erroneous order to disclose X Holdings Corp.'s full list of owners," Br. for Appellants at 16 (emphasis added), for its part, makes no sense. A motion to unseal is not an invitation to collaterally attack every prior evidentiary or discovery ruling, however old, that resulted in particular information entering a court's file in the first place. That rule would lead to chaos—the endless relitigation of otherwise time-barred claims— and Appellants have not offered a single case in support of adopting it here.

---

might sexually abuse children"). This Court is therefore free to consider, for instance, the legitimate public interest at stake in understanding the extent of foreign ownership interests in an important online communications platform.

40

Regardless, the notion that the District Court's 2023 order marked some revolution in the law of corporate disclosure is meritless on its own terms. The Northern District of California is hardly unique in requiring disclosures beyond those required by the Federal Rules because Rule 7.1 "does not cover all of the circumstances that may call for disqualification under the financial interest standard" and "does not prohibit local rules that require disclosures in addition to those required by Rule 7.1." Fed. R. Civ. P. 7.1, 2002 Advisory Comm. Notes; *see also* Wright & Moore, Fed. Prac. & Proc. § 1197 & n.19 (collecting examples of local rules requiring disclosures more extensive than Rule 7.1). In this Circuit alone, the Northern District of California, Central District of California,[10] Western District of Washington,[11] District of Nevada,[12] and District of Montana[13] all require disclosures more extensive than the floor established by the Federal Rules.

Despite the wealth of local rules that supplement Rule 7.1, Mr. Silverman is aware of no case—and Appellants have cited no case—invalidating a local rule for requiring disclosures beyond those required by Rule 7.1 *See, e.g.*, *SBFO Operator*

---

[10] *See* U.S. Dist. Ct. for the Central Dist. of Cal. L.R. 7.1-1 (disclosure of "all persons" that "may have a pecuniary interest in the outcome of the case").

[11] *See* U.S. Dist. Ct. for the W. Dist. of Wash. L.C.R. 7-1 (additional disclosures of LLCs, LLPs, and unincorporated associations).

[12] *See* U.S. Dist. Ct. for the Dist. of Nev. L.C.R. 7.1-1 (disclosure of "all persons" that "have a direct, pecuniary interest in the outcome of the case").

[13] *See* U.S. Dist. Ct. for the Dist. of Mont. L.C.R. 7-1-1 (disclosure of "all persons" that "may have a financial interest in the outcome of the proceeding").

*No.3 LLC v. Onex Corporation*, No. 4:19-cv-03271, 2020 WL 2850249, at *1
(E.D. Mo. June 2, 2020) (rejecting such a challenge to local rule requiring
disclosure of privately held parent corporations, "regardless of their proportional
ownership," because "[t]o the extent Rule 7.1 requires disclosure of certain
corporate relationships, it is not inconsistent to request information under Local
Rule 2.09 about other relationships not listed").  The Federal Circuit, for instance,
recently rejected a petition for relief from a local order of the District of Delaware
requiring that disclosure statements "proceed[] up the chain of ownership until the
name of every individual and corporation with a direct or indirect interest in the
party has been identified," explaining that the ordered disclosures properly related
to "aspects of proper practice before the Court, over which district courts have a
range of authority preserved by the Federal Rules of Civil Procedure."  *In re
Nimitz Tech. LLC*, No. 2023-103, 2022 WL 17494845, at *1, 2 (Fed. Cir. Dec. 8,
2022).  The same is true of the local rule that Appellants belatedly challenge here.

It is difficult to parse, in that vein, the scope of Appellants' objection that
they were required to make disclosures beyond those which "might reasonably be
thought to raise recusal issues."  Br. for Appellants at 26.  The District Court did
not break new ground in requiring disclosure of the investors in a party's parent
company in particular.  Sometimes, the uninformative identity of the parent does
not provide sufficient information to evaluate potential conflicts, *see, e.g.*, *Entropic*

*Commc'ns, LLC v. DirecTV, LLC*, 688 F. Supp. 3d 978, 981–82 (C.D. Cal. 2023), in which case other courts have likewise "proceed[ed] up the chain of ownership" as far as necessary to properly judge the need for recusal, *VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2022 WL 3134427, at \*1 (D. Del. Aug. 1, 2022). Indeed, Rule 7.1 itself has been interpreted by a number of courts to require "identification of grandparent corporations and beyond," Wright & Moore, *supra*, § 1197, because a judge's interests in those entities too "might reasonably be thought to raise recusal issues," Br. for Appellants at 26; *see, e.g.*, *Harris v. Wells Fargo Bank, N.A.*, No. 16-645, 2016 WL 11486587, at \*2 (C.D. Cal. July 14, 2016) (judge recused based on ownership of stock in company that owned more than 10% of parent of a party). Without the disclosures ordered here, the District Court could not have determined, for instance, whether she had a personal relationship with any of X Holdings Corp.'s controlling investors, *see Entropic Commc'ns, LLC*, 688 F. Supp. 3d at 981 (requiring disclosure of "any investors or individual investors who own more than 10% of" a party's parent holding company on those grounds), or whether she had invested with funds with a controlling interest that would not satisfy the recusal safe harbor for "mutual or common investment fund[s]," 28 U.S.C. § 445(d)(4)(i).

The facts of this particular case further underline the point. As the *Washington Post* reported shortly after the disclosure statement at issue in this case was unsealed, the investors who backed Musk in acquiring Twitter have suffered

staggering losses in the time since— "a vaporization of wealth that has little parallel." Faiz Siddiqui, *Musk's Twitter Investors Have Lost Billions in Value*, Wash. Post (Sept. 1, 2024), https://bit.ly/3VSarbI. It is neither surprising nor untoward that a federal court would want to assure itself that it did not have a financial interest in one those investors that might be "substantially affected" by yet more litigation against the company. 28 U.S.C. § 455(b)(4). But the District Court could not have evaluated the possibility of such a conflict with access only to the terse, uninformative disclosure that X Corp. is owned by X Holdings Corp.

To argue about the issue at all, though, is to make clear that it has no business being decided in this case. Appellants failed to timely appeal the 2023 order to supplement their disclosure statement. Having already supplemented it, the issue is moot. And even if it weren't, the question has nothing to do with whether the District Court properly granted Mr. Silverman's motion to unseal a year later. Appellants—staking out a position whose scope is profoundly unclear—cannot reasonably expect this Court to issue an advisory opinion calling into question the local rules of any number of district courts on a reed that thin. Appellants' objection, meritless on its own terms, is not properly presented here.

\* \* \*

This appeal reflects a labored effort by the X Parties to multiply wasteful proceedings in response to an outcome they cannot change—the unsealing of their

44

corporate disclosure statement. As the reporting of any number of news outlets reflects, that unsealing advanced the First Amendment interests that the public's right of access to judicial records is designed to serve, promoting "informed public opinion" on "the public and business affairs of the nation." *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936). Just as importantly, for this Court's purposes, that news is now old news. This Court should reject Appellants' effort to relitigate it.

## CONCLUSION

For the foregoing reasons, Mr. Silverman respectfully urges the Court to dismiss the appeal as moot or, in the alternative, to affirm the District Court.

Date: January 3, 2025

/s/ Grayson Clary
Grayson Clary
*Counsel of Record for*
  *Intervenor-Appellee*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

Jean-Paul Jassy
Nicholas Hartmann
JASSY VICK CAROLAN, LLP
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-5936

I am the attorney or self-represented party.

**This brief contains** | 11, 208 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Grayson Clary | **Date** | 1/3/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/22*