## No. 24-5936

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝖘𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## FOR THE NINTH CIRCUIT

SARAH ANOKE; CATHERINE BONN; ISABELLE CANNELL;
SAMANTHA FESTEJO; DAWN HOISE; WAYNE KRUG; LAURENT
LUCE; PATRICK O'CONNELL; JENNIFER RYAN; JAIME SENA;
JAMES SHOBE; KARYN THOMPSON; CRISTIAN ZAPATA;
MELANIE EUSEBIO; CARLOS MOISES ORTIZ GOMEZ,

*Plaintiffs-Appellees*,

v.

JACOB SILVERMAN,

*Intervenor-Appellee*,

TWITTER, INC.; X HOLDINGS CORP.; X CORP.;
X HOLDINGS I, INC.; ELON MUSK,

*Defendants-Appellants*.

On Appeal from the U.S. District Court for the Northern District of California
No. 3:23-cv-02217 (Hon. Susan Illston)

## REPLY BRIEF OF APPELLANTS

MICHAEL E. KENNEALLY          ERIC MECKLEY
BRENDAN J. ANDERSON           BRIAN D. BERRY
MORGAN, LEWIS & BOCKIUS LLP   MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW  One Market Street, Spear Street Tower
Washington, DC 20004          San Francisco, CA 94105
(202) 739-3000                (415) 442-1000

*Counsel for Defendants-Appellants*
*Twitter, Inc., X Holdings Corp., X Corp., X Holdings I, Inc., and Elon Musk*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................1

I.   The district court erred in requiring X Holdings Corp. to disclose its
     shareholders. ..............................................................................1

     A.   The Court has jurisdiction to resolve this issue. ...................2

     B.   The Company's initial disclosure complied with Rule 7.1 and
          Local Rule 3-15. ....................................................................7

II.  The district court abused its discretion in unsealing the X Holdings
     Corp.'s investor list......................................................................12

     A.   The Company demonstrated good cause for sealing. .........12

     B.   Neither the First Amendment nor common law right of access
          applies to the Company's disclosure..................................16

III. The Court has jurisdiction over this appeal..................................20

     A.   The appeal is not moot. ........................................................20

     B.   The capable of repetition exception applies.........................24

IV.  At a minimum, the Court should vacate the district court's decision. ..........26

CONCLUSION...................................................................................27

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ..............................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ...................................................................4

*Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*,
117 F.4th 1200 (9th Cir. 2024) .......................................................17, 18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................5

*Hagestad v. Tragesser*,
49 F.3d 1430 (9th Cir. 1995) ...................................................................4

*Harmston v. City & County of San Francisco*,
627 F.3d 1273 (9th Cir. 2010) .............................................................3, 6

*Hilton v. Mumaw*,
522 F.2d 588 (9th Cir. 1975) ...................................................................2

*Hook v. Ariz. Dep't of Corr.*,
107 F.3d 1397 (9th Cir. 1997) .................................................................5

*Hooks ex rel. NLRB v. Nexstar Broad., Inc.*,
54 F.4th 1101 (9th Cir. 2022) ...............................................................26

*In re Lombardi*,
741 F.3d 903 (8th Cir. 2014) .................................................................22

*In re Reps. Comm. for Freedom of the Press*,
773 F.2d 1325 (D.C. Cir. 1985) ............................................................17

*Islamic Shura Council of S. Cal.*,
635 F.3d 1160 (9th Cir. 2011) ...............................................................21

*Kircher v. Putnam Funds Tr.*,
547 U.S. 633 (2006) .................................................................................3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*KL Grp. v. Case, Kay & Lynch*,
  829 F.2d 909 (9th Cir. 1987) ................................................................2

*Legal Voice v. Stormans Inc.*,
  738 F.3d 1178 (9th Cir. 2013) ..............................................................4

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017).................................................................................2

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)...............................................................................4

*Montes v. United States*,
  37 F.3d 1347 (9th Cir. 1994) .............................................................3, 5

*Thomassen v. United States*,
  835 F.2d 727 (9th Cir. 1987) ................................................................3

*United States v. 191.07 Acres of Land*,
  482 F.3d 1132 (9th Cir. 2007) ..............................................................4

**CONSTITUTIONAL PROVISIONS & STATUTES**

28 U.S.C.
  § 455..........................................................................................................7
  § 1291........................................................................................................4
  § 1447........................................................................................................3

Rules Enabling Act .................................................................................1, 8

U.S. CONST. amend. I.................................................................................16

**RULES**

D. MONT. R. 7.1-1 ........................................................................................9

D. NEV. CIV. R. 7.1-1 ..................................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

FED. R. APP. P.

    3.................................................................................................5

    4.................................................................................................2

FED. R. CIV. P. 7.1 ..................................................................*passim*

Local Rule 3-15...........................................................1, 2, 4, 6

N.D. CAL. CIV. R.

    2.09.............................................................................................10

    3-15 ......................................................................................1, 8, 12

W.D. WASH. CIV. R. 7.1 ..............................................................9

**OTHER AUTHORITIES**

15A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE
    § 3911.2 (3d ed. 2024).........................................................5

CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3C ....................................7

**INTRODUCTION**

Much of Intervenor's argument reads as though the district court ordered the filing and unsealing of an ordinary Rule 7.1 corporate disclosure statement. He never acknowledges the staggering implications of the district court's reading of Local Rule 3-15, which would require every company in litigation in the Northern District of California—including all for-profit and nonprofit private corporations with confidential shareholder or owner lists—to disclose its full list of shareholders or owners at the outset of every case. Intervenor never tries to defend that interpretation of Local Rule 3-15, much less explain how such a rule would be compatible with the Federal Rules or the Rules Enabling Act. He primarily seeks to duck those problems by inventing jurisdictional obstacles to the Court's consideration of them.

None of Intervenor's arguments hold water. The Court has jurisdiction over the district court's interpretation of Local Rule 3-15 because it merged into the appealable final order and was crucial to the outcome. The appeal is not moot because the Court can still grant some relief. And, on the merits, the decision to require this overbroad disclosure, and then unseal it, was error and should be reversed.

**ARGUMENT**

**I.    The district court erred in requiring X Holdings Corp. to disclose its shareholders.**

Intervenor hardly defends the decision ordering the Company to disclose every person and entity with any ownership interest in X Holdings Corp., however

1

small. Most of his limited discussion of that decision just argues that this Court lacks jurisdiction to evaluate it. Intervenor does not seriously attempt to justify the district court's misinterpretation of Local Rule 3-15.

Intervenor's strategy fails. This Court has appellate jurisdiction over the district court's misinterpretation of Local Rule 3-15. And because the unsealing of X Holdings Corp.'s investor list turns on this foundational legal error, the unsealing order cannot stand.

### A. The Court has jurisdiction to resolve this issue.

Intervenor argues that the Court lacks jurisdiction to question the district court's June 6, 2023 order requiring disclosure of the investor list ("Supplementation Order"). Intervenor first claims (at 20-21) that such an appeal is untimely because it was not filed within the thirty-day timeframe set by Rule 4(a) of the Federal Rules of Appellate Procedure. He ignores, however, that the Company could not appeal the Supplementation Order. It was interlocutory, and any appeal would have been dismissed. *See, e.g.*, *Microsoft Corp. v. Baker*, 582 U.S. 23, 27 & n.1 (2017) (observing that 28 U.S.C. § 1291 and § 1292 authorize appeal only of final decisions and limited categories of interlocutory orders). Appeal deadlines are based not on the date of an *unappealable* order, but on the date of the order that establishes the right to appeal. *See, e.g.*, *Hilton v. Mumaw*, 522 F.2d 588, 603 (9th Cir. 1975) (order denying summary judgment); *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 918 n.5

(9th Cir. 1987) (interlocutory protective order); *Thomassen v. United States*, 835 F.2d 727, 732 n.3 (9th Cir. 1987) (order denying disqualification); *Montes v. United States*, 37 F.3d 1347, 1350 (9th Cir. 1994) (order dismissing complaint with leave to amend).

Intervenor suggests that the Supplementation Order could have been appealed as part of an appeal from the district court's June 27, 2023 remand order. But such an appeal would have been dismissed, too: the district court's remand of the case for lack of jurisdiction (*see* ER-15) was not appealable. *See* 28 U.S.C. § 1447(d). Indeed, "even a remand premised on an erroneous conclusion of no jurisdiction is unappealable." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 642 (2006). Intervenor invokes *Harmston v. City & County of San Francisco*, 627 F.3d 1273, 1277–81 (9th Cir. 2010), but it confirms that an appeal of the remand would have been dismissed. In *Harmston*, the Court held that a remand based on a discretionary decision not to exercise supplemental jurisdiction over state law claims is a final appealable order. *Id*. at 1277. That conclusion, however, rested on precedent holding that declining to exercise supplemental jurisdiction is different from a "lack of subject matter jurisdiction." *Id.* (citation omitted). The Court reaffirmed that appeals from orders remanding a case for lack of subject matter jurisdiction are not appealable. *Id.*

Intervenor never grapples with the Company's clear inability to appeal the Supplementation Order any earlier than it did. His unstated view seems to be that

the Company is out of luck: it should have appealed earlier, even though no basis for appellate jurisdiction existed, and cannot appeal once a basis for appellate jurisdiction materialized. Unsurprisingly, he cites no support for that Kafkaesque theory. Indeed, this Court has "generally held that even when parties *may* immediately appeal an interlocutory order"—unlike here—"they are not *required* to do so." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1183 (9th Cir. 2013).[1] For multiple reasons, this Court has jurisdiction to consider the district court's misapplication of Local Rule 3-15.

First, the district court's August 20, 2024 order unsealing the list ("Unsealing Order") is a final order for purposes of 28 U.S.C. § 1291 because the "district court disassociate[d] itself from [the] case" through that order. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citation omitted). When, as here, sealing or unsealing is the only issue before the district court, such orders are final orders for purposes of appeal. *See, e.g.*, *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992); *Hagestad v. Tragesser*, 49 F.3d 1430, 1432 (9th Cir. 1995). When the district court decided the motion to intervene and unseal, nothing else was pending before the court. The Unsealing Order thus disposed of all issues in the

---

[1]  Intervenor's suggestion (at 20) that the Company cannot appeal because it did not pursue a mandamus petition or other unidentified opportunities for interlocutory review contravenes settled precedent. *See, e.g.*, *United States v. 191.07 Acres of Land*, 482 F.3d 1132, 1135 (9th Cir. 2007) ("Failure to pursue an opportunity for interlocutory appeal normally does not constitute a waiver.").

case. And, as with any other final order, the earlier interlocutory ruling requiring supplementation of the corporate disclosure merged with, and is reviewable on an appeal from, the final order. *See, e.g.*, *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1402 (9th Cir. 1997) (treating postjudgment contempt order as final order into which "interrelated" injunction modification order merged).[2]

Second, even if the Unsealing Order were viewed as a collateral order but not a final order, the Supplementation Order would still properly be part of the appeal. The scope of collateral-order appeals "can extend beyond the immediate occasion for appeal . . . to a closely related matter."  15A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3911.2 (3d ed. 2024) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172 (1974)).  Here, the Supplementation Order is closely related to the Unsealing Order, for without the former, Intervenor never would have intervened and requested unsealing.  Intervenor is wrong to say (at 1) that the Supplementation Order "played no role" in the Unsealing Order.  The Supplementation Order was the *cause* of the unsealed information's injection into the case; without it, there would have been no information for the Unsealing Order to unseal.  And the

---

[2]  Because the Supplementation Order merged into the Unsealing Order, Intervenor is wrong to suggest in passing (at 20–21) that the notice of appeal needed to designate both orders. *See* FED. R. APP. P. 3(c)(4).  But even if it had been appropriate to designate both orders, a failure to do so would not bar appeal because the Company's intent was clear from its opening brief and Intervenor suffered no prejudice. *See, e.g.*, *Montes*, 37 F.3d at 1351.

district court emphasized its reading of Local Rule 3-15 in explaining why it thought unsealing was appropriate. ER-9.[3]

Third, the Court can in any event exercise pendent appellate jurisdiction over the Supplementation Order. Exercise of pendent appellate jurisdiction is appropriate if the pendent order is "'inextricably intertwined' with or 'necessary to ensure meaningful review of' the order properly before" the Court. *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1154 (9th Cir. 2018) (citation omitted). The Supplementation Order satisfies either possibility. It is inextricably intertwined because the Court "must decide the pendent issue in order to review the claims properly raised on interlocutory appeal." *Meredith v. Oregon*, 321 F.3d 807, 814 (9th Cir. 2003) (citation omitted). And, for similar reasons, reviewing the Supplementation Order is necessary to ensure meaningful review of the Unsealing Order. Whether X Holdings Corp.'s investor list should ever have been a part of the judicial record is a critical predicate question in deciding whether unsealing that list was proper. Again, the

---

[3] In *Harmston*, the Court stated in dicta that earlier rulings generally do not merge into later orders that are appealable under the collateral order doctrine. 627 F.3d at 1277–78. But *Harmston*'s basis for that statement—concern about allowing "several multi-issue appeals"—is inapplicable here. If the unsealing order qualifies as a collateral order at all, it is the uncommon sort of collateral order that arises *after* judgment when there is no longer a meaningful risk of future appeals. The Company is merely asking for "a single appeal . . . [after] final judgment has been entered." *Id.* at 1278 (citation omitted). Moreover, *Harmston* did not address a scenario, as here, in which the earlier order is closely—indeed causally—related to the appealable later order.

6

district court's analysis explicitly embraced the premise that Local Rule 3-15 required the disclosures at issue. ER-9. That premise, by the district court's own rationale, is both inextricably intertwined with and necessary to ensure meaningful review of the unsealing decision. The Court can and should review the Supplementation Order.

## B. The Company's initial disclosure complied with Rule 7.1 and Local Rule 3-15.

Intervenor does not meaningfully respond to the Company's argument that the district court misinterpreted Local Rule 3-15 when it held that the Company's initial disclosure statement was insufficient. As the Company's opening brief explained (at 20–22), the rule's text and purpose require disclosure only of persons or entities that the party knows have a sufficient interest in the litigation that might warrant the assigned judge's recusal. This interpretation is supported by the similarities in language between Local Rule 3-15, 28 U.S.C. § 455(b)(4), and Canon 3C(1)(c) of the Code of Conduct for United States Judges. Intervenor also does not respond to the Company's argument (at 24–25) that applying the district court's reading of Local Rule 3-15 to corporations would conflict with Rule 7.1, which already establishes how "the 'financial interest' standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges" applies to incorporated entities, Fed. R. Civ. P. 7.1, advisory

7

committee's note to 2002 amendment, and with the Rules Enabling Act. The Company's initial disclosure statement, including its certification that there was no conflict or interest to report, satisfied both Rule 7.1 and Local Rule 3-15.

Ignoring these arguments, Intervenor pretends that the disclosure required by the district court is completely normal. Yet he fails to cite a *single* case from the Northern District of California—or any court—that applied corporate disclosure rules to require the disclosure of every shareholder, no matter how minor, of any corporation other than X Holdings Corp. Surely if the district court's interpretation of Local Rule 3-15 were right, other companies would routinely disclose a complete list of their shareholders. But even a cursory review of disclosure statements filed by other privately and publicly held companies in the Northern District of California confirms that the statements that the Company initially provided—not the supplementation that the district court required—reflect the usual practice in that court. *See, e.g.*, *Lopez v. Walmart Inc.*, No. 25-cv-295-BLF (N.D. Cal. Jan. 8, 2025), ECF No. 2; *Wilson v. Target Corp.*, No. 25-cv-43-PHK (N.D. Cal. Jan. 2, 2025), ECF No. 3; *Bally Keal Vineyards, LLC v. Graybar Elec. Co.*, No. 22-cv-5503-KAW (N.D. Cal. Sept. 27, 2022), ECF No. 5; *Meijer, Inc. v. Bausch Health Cos. Inc.*, No. 19-cv-5822-WHA (N.D. Cal. Nov. 26, 2019), ECF No. 54.

Rather than address Northern District of California practice, Intervenor cites other local rules in asserting (at 41–42) that the district court "did not break new

8

ground." But those rules are written more narrowly than the district court's interpretation of Local Rule 3-15. Three of the local rules require disclosures of interests in the "outcome" of the case (not, like Local Rule 3-15, disclosures of interests in any "party" to the case). *See* C.D. CAL. R. 7.1-1; D. MONT. R. 7.1-1(a)(1); D. NEV. CIV. R. 7.1-1(a). And the other cited local rule addresses nongovernmental organizations that are not corporations, like LLCs and LLPs, which are often subject to different rules than corporations. *See* W.D. WASH. CIV. R. 7.1(a)(1); *cf.* FED. R. CIV. P. 7.1(a)(2). Intervenor cites nothing to suggest that any court in those jurisdictions (or any others) ever interpret their rules as the district court did here to require every party to disclose any ownership stake of whatever amount.

Similarly off point are the cases that Intervenor cites to claim that the district court's approach followed normal practice. *See Harris v. Wells Fargo Bank, N.A.*, No. 16-cv-645, 2016 WL 11486587, at *2 (C.D. Cal. July 14, 2016) (requiring disclosure of publicly held corporation that owned 10% of defendant's parent corporation); *Entropic Commc'ns, LLC v. DirecTV, LLC*, 688 F. Supp. 3d 978, 982 (C.D. Cal. 2023) (construing Central District of California's rule as "not requir[ing] the disclosure of the full chain of ownership" and instead setting a "10% threshold" drawn from Rule 7.1); *VLSI Tech. LLC v. Intel Corp.*, No. 18-cv-966, 2022 WL 3134427, at *1 (D. Del. Aug. 1, 2022) (applying district judge's standing order con-

cerning joint ventures, LLCs, and partnerships). Indeed, the *Entropic Communications* court explained why, considering longstanding practice, the "10% threshold" reflects the "appropriate cutoff for recusal purposes." 688 F. Supp. 3d at 982. Under that interpretation, the only X Holdings Corp. shareholder that would have needed to be disclosed is Elon Musk. The district court's interpretation of Local Rule 3-15, on the other hand, rejects any limiting principle and here required the disclosure of hundreds of shareholders holding as little as a few hundred shares.

Intervenor also cites two nonprecedential, out-of-circuit cases for the idea that local rules may require greater disclosure than Rule 7.1. *See SBFO Operator No. 3, LLC v. Onex Corp.*, No. 19-cv-3271, 2020 WL 2850249 (E.D. Mo. June 2, 2020), and *In re Nimitz Tech. LLC,* No. 23-103, 2022 WL 17494845 (Fed. Cir. Dec. 8, 2022). But neither case sweeps so broadly. *Nimitz* merely denied mandamus relief after the district court ordered production of records based on concerns that a party had committed "fraud on the court," failed to comply with court orders, and violated rules of professional conduct. 2022 WL 17494845, at *2 (citation omitted). And the entire analysis of the alleged conflict in *SBFO Operator* consists of a single unelaborated sentence: "To the extent Rule 7.1 requires disclosure of certain corporate relationships, it is not inconsistent to request information under Local Rule 2.09 about other relationships not listed." 2020 WL 2850249, at *2. The required disclosure in that case, moreover, was far more limited than the required disclosure

10

here: the corporate party merely needed to identify all parent companies and subsidiaries. *See id.*

Intervenor offers no answer to the harmful consequences of the district court's interpretation that the Company described in its opening brief (at 22–23, 27–28). These include the unworkable requirement that every publicly held corporation disclose all its shareholders in every case and the routine infringement of privacy interests of investors in for-profit and nonprofit private corporations. Nothing in the Local Rule distinguishes between different types of corporations.

Intervenor speculates (at 44) that a judge *could* want information about the owners of X Holdings Corp. and that such information *could* warrant disqualification. But in evaluating the amount of disclosure to require under Rule 7.1 the Advisory Committee deliberately settled on "limited" disclosure requirements, recognizing that it was not "feasible to dictate more detailed disclosure requirements in Rule 7.1(a)." Fed. R. Civ. P. 7.1, advisory committee notes to the 2002 amendment. If a judge believes that further information is needed in a specific case to evaluate recusal concerns, a judge may make an order to that effect. But such a case-specific determination is not what happened here. Instead, the district court adopted an untenable interpretation of the local rule that leads to the "over-disclosure" identified by the Advisory Committee.

Because the Company complied with both Rule 7.1 and Local Rule 3-15 as properly interpreted, it should not have had to disclose X Holdings Corp.'s investor list. It follows that there should have been no such list on the docket to unseal. Both the Supplementation and Unsealing Orders should be reversed.

## II. The district court abused its discretion in unsealing the X Holdings Corp.'s investor list.

### A. The Company demonstrated good cause for sealing.

Intervenor starts his response to the Company's good-cause argument by attacking a strawman. According to his portrayal (at 32–33), the Company argues that the district court "necessarily" abused its discretion because the Unsealing Order conflicted with the court's June 13, 2023 order permitting the shareholder list to be filed under seal and because the court was bound by that order under the law of the case. The Company never made such arguments.

The Company's arguments, instead, are twofold. First, the district court failed to apply Ninth Circuit precedent ruling that a prior sealing order shifts the burden onto "the party seeking disclosure" after such an order, who "must present sufficiently compelling reasons" for unsealing because the district court "already has determined that 'good cause' exists to protect th[e] information from being disclosed to the public." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This failure to apply the correct legal standard is an abuse of discretion. *See* X Br. 31–32. Second, the district court offered no explanation for

12

the inconsistency between its original finding that the Company's declaration established good cause for sealing (in granting the Company's contested motion to seal and overruling the Plaintiffs' objection to sealing) and its later determination that the same declaration was patently insufficient to establish good cause. *See* X Br. 31–33.

Intervenor never responds to the Company's argument that the district court's analysis rested on an error of law. The district court improperly held the Company to a heightened "compelling" justification standard for overcoming the presumption of access, ER-9 (quoting *Hagestad*, 49 F.3d at 1434), even though the court had permitted the supplemental disclosure to be filed under seal, ER-16. That was legal error under *Phillips* and an abuse of discretion on its own.[4]

Intervenor fares no better citing (at 33) some cases that found insufficient cause to seal corporate disclosure statements. Contrary to Intervenor's suggestion, courts in this Circuit have had no trouble finding good cause when a certificate of interested parties would disclose investors who invested on a confidential basis. *See*

---

[4] Intervenor cites *Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), but it is not analogous. There, a magistrate judge merely engaged in "further review of [a] special master's discovery findings," and reviewed each document "in light of [a] change in intervening law." *Id.* at 1186. And Intervenor's citation of *Milliner v. Mutual Securities, Inc.*, No. 15-cv-3354, 2021 WL 2645794 (N.D. Cal. June 28, 2021), if anything, supports the Company. There, the court properly applied *Phillips* and found good cause consistent with its earlier sealing order. *Id.* at *1, *4–5.

13

*G&G Closed Cir. Events, LLC v. Fanmio Inc.*, No. 24-cv-1279, 2024 WL 4228835, at *2 (D. Nev. Sept. 18, 2024); *S Valley View Twain v. TerraCotta Credit Reit LLC*, No. 23-cv-1275, 2023 WL 11800905, at *1 (D. Nev. Nov. 1, 2023); *Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, No. 21-cv-1376, 2022 WL 18999842, at *6 (W.D. Wash. Dec. 6, 2022), *report and recommendation adopted*, 2023 WL 1860663 (W.D. Wash. Feb. 9, 2023). Intervenor's cited (out-of-circuit) cases found insufficient justification to seal lists of certain LLCs' or limited partnerships' members, which in diversity cases implicate not just recusal issues but also the court's subject matter jurisdiction.[5] It is unclear from those decisions to what extent the parties who requested sealing submitted evidence to support their requests. *See, e.g.*, *Terrapin*, 2024 WL 3949980, at *3 ("[T]here is no supporting declaration or affidavit or other evidence in support of the conclusions set forth in Plaintiff's memorandum of law."). But the correct view, reflected by decisions from courts in this Circuit, is that "concern about losing investors who fear public pressure not to invest in [] projects" is "sufficient showing of potential injury" to justify sealing. *S Valley*,

---

[5] *See Terrapin Bus. Funding LLC v. Stellar Beach Rentals, LLC*, No. 24-cv-2981, 2024 WL 3949980, at *4 (E.D.N.Y. Aug. 23, 2024); *Mayer v. Patriot Pickle Inc.*, No. 23-cv-1299, 2024 WL 162881, at *2 (W.D.N.Y. Jan. 16, 2024); *Wilkins v. Tory Burch, LLC*, No. 23-cv-422, 2023 WL 3600084, at *1 (E.D. Mo. May 23, 2023); *Darton Archery, LLC v. Bowtech, LLC*, No. 23-cv-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023); *WSOU Invs., LLC v. Salesforce, Inc.*, No. 20-cv-1163, 2023 WL 2213200, at *1 (D. Del. Feb. 24, 2023); *Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*, No. 23-cv-81, 2023 WL 2435806, at *1 (M.D. Fla. Feb. 16, 2023).

2023 WL 11800905, at *1 (citation omitted); *see also G&G Closed Cir.*, 2024 WL 4228835, at *2 (finding good cause based on argument that "investors invested [in the company] on a confidential basis" and that disclosure "would potentially harm [the company] by discrediting with future investors who desire to invest on a confidential basis").

Intervenor dismisses interests in financial privacy, but one of their own cited cases underscores the importance of such interests. *See Overstock.com, Inc. v. Goldman Sachs Grp., Inc.*, 231 Cal. App. 4th 471, 505 (2014). There, the company seeking sealing submitted a declaration, much like the Company's here, attesting to the importance of "safeguarding the confidentiality of client information," which the company treated as "proprietary and confidential" and important to maintaining "a competitive advantage and reputational benefit." *Id.*; *see* ER-57–58. Such "confidential financial information . . . implicates significant privacy interests." *Overstock.com*, 231 Cal. App. 4th at 505. Indeed, investors may wish for privacy to avoid "public pressure not to invest in [certain] projects" or companies. *S Valley*, 2023 WL 11800905, at *1 (citation omitted). Or they may worry about "public pressure, harassment, or media attention" for having already invested in a project or company. *See id.* Such privacy interests are particularly worthy of protection where, as here, "the confidential financial information at issue . . . is that of *third parties*" rather than

the litigants themselves. *Overstock.com*, 231 Cal. App. 4th at 505 (distinguishing *In re Marriage of Burkle*, 135 Cal. App. 4th 1045, 1068 (2006), on this ground).

### B. Neither the First Amendment nor common law right of access applies to the Company's disclosure.

For the reasons just discussed, the district court's good-cause analysis does not survive scrutiny, so Intervenor spends much of his brief arguing (at 24–32) for a heightened standard. The Court need not entertain this argument because the district court purported to apply the good-cause standard. *See* ER-8; *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023) ("[W]e must always be mindful that we are a court of review, not first view." (citation omitted)). But if the Court entertains these arguments, it should reject them.

Intervenor does not dispute that this Court has never extended the First Amendment presumption of access to a company's list of owners. Although the First Amendment presumption of access extends to many criminal and civil proceedings, its scope turns on whether the record has "historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular [governmental] process in question." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020) (citation omitted). This

16

analysis is known as the "experience and logic" test. *See Forbes Media LLC v. United States*, 61 F.4th 1072, 1077 (9th Cir. 2023).[6]

As for "experience," Intervenor does not even argue that the public has generally had access to complete information about every corporate litigant's ownership. Instead, he argues (at 25) that corporate disclosure statements in general are ordinarily filed on public dockets. But this reasoning "operates at a stratum of abstraction far removed from the [records] at issue here." *Forbes Media*, 61 F.4th at 1078. Intervenor cannot simply rely on the "label" or "categor[y] of documents" but must instead consider "functional concerns." *Id.* at 1078, 1083 (citations omitted); *see also, e.g.*, *In re Reps. Comm. for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C. Cir. 1985) (Scalia, J.), ("The more precise inquiry . . . is a functional rather than classificational one: whether information *of the sort at issue here*—regardless of its prior or current classification as court records—was traditionally open to public scrutiny."). There is no historical precedent for filing this extensive and detailed ownership information in judicial proceedings, much less historical precedent for

---

[6] This Court's "precedent conflicts as to whether *both* experience and logic must support public access for the right to attach." *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1207 n.2 (9th Cir. 2024). The better reading of Supreme Court precedent is that both considerations are required. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986) ("If the particular proceeding in question passes these tests of experience *and* logic, a qualified First Amendment right of public access attaches." (emphasis added)). Here, however, neither consideration supports public access.

17

doing so without confidentiality restrictions. In fact, for some entities (especially ones engaged in expressive activities), First Amendment values would weigh *against* public disclosure, which can create a "deterrent effect on the exercise of First Amendment rights." *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) (citation omitted) (addressing compelled disclosure of donors to charitable organizations).[7]

Nor does "logic" compel extending a First Amendment presumption to this type of filing. When, as here, neither side in the litigation raises any concern about recusal based on a sealed corporate disclosure filing—despite having every incentive to raise meritorious recusal concerns—there is no reason to speculate that the judicial process will function better if outside observers can do so. Still less does such a rule make sense here, when the court quickly determined it lacked jurisdiction and made no substantive rulings on the claims. *Cf. IDT Corp. v. eBay*, 709 F.3d 1220, 1224

---

[7] Intervenor cites *Civil Beat Law Center* to suggest (at 27) that it is appropriate to analyze, at a high level of generality, corporate disclosure statements as such. But *Civil Beat Law Center* reaffirms *Forbes*'s point that focusing on the "categories of documents is not correct." 117 F.4th at 1209 (citation omitted). It found the First Amendment presumption applicable to a "a substantial number" of health and medical records covered by an overbroad state law that required sealing even when the "records contain no private information" or litigants wish to make their own records public. *Id.* at 1210–11. *Civil Beat Law Center* also rebuts Intervenor's attempt to belittle investors' constitutional right to privacy, for it agreed in the context of health records "that protecting an individual's constitutional and statutory right to privacy is a compelling interest that may justify sealing." *Id.* at 1210.

n.* (8th Cir. 2013) ("[P]ublic access to the complaint would add little if any value to the judicial process where, as here, the court's only action was to seal the complaint and sign a stipulated dismissal."). On the contrary, as this case illustrates, unsealing in such circumstances just encourages outsiders with no interest in recusal issues (or the underlying case) to coopt a corporate disclosure filing and the judicial process to obtain nonpublic information that would otherwise be unattainable. Intervenor's off-point citations provide no support for a presumption of access on these facts. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68–69 (1st Cir. 2022) (describing the presumption against allowing parties to litigate using pseudonyms); *In re Nat'l Broad. Co., Inc.*, 828 F.2d 340, 344 (6th Cir. 1987) (finding the logic prong satisfied when parties moved to disqualify a judge for bias).

Intervenor also argues that the common law presumption of access should apply because this type of record is "more than tangentially related to the merits of [the] case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). But he cites no cases from this Circuit ever drawing that conclusion. The cases point the opposite way. *See G&G Closed Cir.*, 2024 WL 4228835, at *1 (citing *Center for Auto Safety*, *Kamakana*, and other Ninth Circuit cases to conclude that good-cause standard applied to certificate of interested parties); *S Valley*, 2023 WL 11800905, at *1 (applying *Center for Auto Safety* to conclude that the good-cause standard applied to list of partnership's seventy-one investors); *Best Odds*

*Corp. v. iBus Media Ltd.*, No. 14-cv-932, 2014 WL 5687730, at *2 (D. Nev. Nov. 4, 2014) (applying *Kamakana* to conclude that good-cause standard applied to certificate of interested parties); *see also Guild Mortg.*, 2022 WL 18999842, *4 (finding that corporate disclosure form's implications for subject matter jurisdiction was sufficiently distinct from merits to warrant applying good-cause standard). The good-cause standard applies, and the Company satisfied it.

## III.   The Court has jurisdiction over this appeal.

Intervenor begins his brief by essentially repeating the arguments made in his motion to dismiss the appeal. Intervenor is mistaken for all the reasons described in the Company's response to the motion to dismiss. *See* ECF No. 10.1. Below are some additional responses to points made in his brief.

### A.   The appeal is not moot.

A case is not moot "[i]f some relief can be granted," even when that relief is not "fully satisfactory." *Garding v. Mont. Dep't of Corr.*, 105 F.4th 1247, 1255 (9th Cir. 2024) (citation omitted). Intervenor has not met his burden to show that this Court cannot offer any relief. It could order that the investor list be resealed—or removed from the district court's docket entirely, because it should not have been produced in the first place. Intervenor does not demonstrate why either option would not constitute "some relief." *Id.*; *see Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). Resealing or removal from the docket would, if nothing else,

20

end the judiciary's dissemination of the information because someone looking at the court's docket would no longer be able to access it.

Intervenor invents a categorical rule (at 16) that appeals related to unsealing orders are moot if the information has been made available to the public. But the case law does not support this categorical rule. As the Company explained in response to Intervenor's motion to dismiss, the Ninth Circuit cases he cites did not involve unsealing orders. *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014), and *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012), both involved requests for injunctions against parties preventing them from disclosing information. These cases involved courts' power to grant the "extraordinary remedy" of an injunction against a party. *E.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Here, all that is involved is courts' power to manage their dockets, and the Company does not need to meet the requirements of an injunction. The other cases—*Islamic Shura Council of Southern California*, 635 F.3d 1160, 1164 (9th Cir. 2011), and *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008)—involved the appealability of unsealing orders under the collateral order doctrine. Appealability under that doctrine asks whether orders can be effectively reviewed without an interlocutory appeal—it does not require determining that every appeal of such an order after final judgment would be moot.

Nor does "every circuit" follow Intervenor's rule. Just the opposite. In *Stanko v. Stirling*, 109 F.4th 681, 699 (4th Cir. 2024)—a case Intervenor neither cites nor distinguishes—a denial of a motion to seal was held not to be moot. While the Fourth Circuit admitted it might not be able to "fully rectify an improper disclosure, [it] could provide partial but meaningful relief by ordering [disclosed materials] re-sealed." *Id*. Other circuits have similarly held that appeals from orders disclosing confidential information are similarly not moot. *See In re Lombardi*, 741 F.3d 903, 904 (8th Cir. 2014) (en banc) (holding that appeal of discovery production order was not moot despite argument that the information had "become known through media accounts" because "there was a live controversy over whether the [appellant] was required to provide it"); *ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 394 (3d Cir. 2005) ("Although we can fashion no remedy erasing the knowledge ADAPT gained from the disclosed materials, we are able to fashion some meaningful relief. . . . Were we to hold in PHA's favor, return or destruction of that information would be 'some form of meaningful relief' to PHA, however Pyrrhic." (citation omitted)).[8]

---

[8] Contrary to Intervenor's assertion, that these cases involved orders directed at the "parties appearing before" the court is irrelevant. The relief the Company seeks, like that in the cited cases, can be obtained by removing the shareholder list from the docket (if the Supplementation Order is reversed) or at least the public docket (if the Unsealing Order is reversed); the Company is not requesting that the Court order anything concerning third parties not before the Court.

Intervenor's cited cases are inapposite. In *Constand v. Cosby*, 833 F.3d 405, 409 (3d Cir. 2016), the defendant's "own counsel . . . indicated that no meaningful relief [was] possible" and could not identify "whom he would seek to enjoin." Here, by contrast, the Company has consistently argued that the Court can provide meaningful relief, and the Company is not seeking to "enjoin" anyone. Next, *Ohio A. Philip Randolph Inst. v. Obhof*, 802 F. App'x 185, 186 (6th Cir. 2020), does not appear to involve a request to reseal documents or remove them from a court docket. And *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), did not provide an analysis of mootness principles; it simply acknowledged, with regret, that the court could not make publicly disclosed information secret again.

Finally, Intervenor suggests (at 12, 17–18) that whatever the Court might order as to the district court's resealing, the appeal is moot because *he* filed the unredacted investor list on this Court's docket as part of his motion to dismiss. *See* ECF No. 8.3. But if this Court reverses the district court's supplementation order or its unsealing order, the Court can and should strike that item from the Court's docket. Courts widely reject "maneuvers designed to insulate a decision from review" through manufactured mootness. *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012); *see also Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 723 (9th Cir. 2024) ("Litigants who have already demonstrated their willingness to tactically manipulate the federal courts in this way should *not* be given

any benefit of the doubt."). Intervenor's self-serving conduct does not moot the parties' controversy.

**B.    The capable of repetition exception applies.**

Even if this appeal were moot, which it is not, jurisdiction would be proper under the exception for actions that are "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (citation omitted). Intervenor's contrary arguments are unpersuasive.

On whether "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," *id*. (brackets and citation omitted), Intervenor almost entirely relies (at 20) on the hypothetical availability of an emergency stay of a district court's unsealing order in future cases, even though a stay was impossible here. But the mere possibility of an emergency stay does not make an order capable of being fully litigated. *See, e.g.*, *Johansen ex rel. NLRB v. San Diego Cnty. Dist. Council of Carpenters*, 745 F.2d 1289, 1292–93 (9th Cir. 1984) ("A court's consideration of an emergency stay . . . cannot constitute a full review of an action in the sense contemplated . . . . [T]here is always some 'foreseeable circumstance' in which a court could hastily review a particular matter.").

Intervenor again cites *Protectmarriage.com-Yes on 8*, 752 F.3d at 837, and *Doe No. 1*, 697 F.3d at 1240–41, but they are not to the contrary. These cases declined to apply the exception in "[a]ctions seeking to enjoin future conduct" because

24

"the challenged conduct might never occur" and the plaintiff can request preliminary injunctive relief. *Protectmarriage.com-Yes on 8*, 752 F.3d at 837. With unsealing orders, by contrast, the court's order is necessarily of short duration and, as this case illustrates, emergency relief may be impossible. This is not a case where "a different litigation strategy" could have avoided the disclosure. *Id.* at 837; *see also In re Search of Fair Fin.*, 692 F.3d 424, 428 (6th Cir. 2012) (applying the exception because the sealing dispute was "too short to be fully litigated").[9]

As to whether "there is a reasonable expectation that the same complaining party will be subject to the same action again," *Kingdomware*, 579 U.S. at 170 (brackets omitted), there is no need for speculation. Another judge in the Northern District of California has *already* construed Local Rule 3-15 to require submission of X Holdings Corp.'s investor list and, since the decision below, issued an order denying a motion to seal that list. *See* Order Denying Motion to File Under Seal, *McMillian v. Musk*, No. 23-cv-3461 (N.D. Cal. Dec. 17, 2024), ECF No. 119. Ignoring this recent episode, Intervenor claims (at 19) that because the Company must provide a factual justification for each sealing request, it cannot find itself in exactly

---

[9]  Intervenor does not deny that the Company had no opportunity to fully litigate the Unsealing Order given its short duration and the clerk's inadvertent unsealing of the investor list the next day. Supreme Court precedent supports looking to the particular facts of the case in determining whether the capable of repetition exception applies. *See Kingdomware*, 579 U.S. at 170 (finding that the exception "applie[d] to these short-term contracts" because they "were fully performed in less than two years after they were awarded").

the same situation again. But this Court rejected that sort of argument in *Hooks ex rel. NLRB v. Nexstar Broadcasting, Inc.*, 54 F.4th 1101, 1114 (9th Cir. 2022). If the need to prepare a new record were enough to escape the capable of repetition exception, that exception would never apply. Here, it suffices that the Company faces "the same legal issue" in other cases in the Northern District of California. *Id.*; *see also Kingdomware*, 579 U.S. at 170 (explaining that "the same legal issue in this case is likely to recur").

Because the Company meets both requirements, the capable of repetition exception provides an independent basis for jurisdiction.

## IV. At a minimum, the Court should vacate the district court's decision.

If the Court concludes, which it should not, that this appeal is moot and that no exception to mootness applies, it should follow "established practice" and vacate the district court's decision. *NASD Disp. Resol., Inc. v. Jud. Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) (citation omitted); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).[10] Intervenor's counterarguments are meritless.

---

[10] Contrary to Intervenor (at 22–23), there is nothing inconsistent in arguing that this case is not moot while arguing, in the alternative, for vacatur. The Company maintains that the Court can still afford the Company partial if incomplete relief, but if the Court disagrees and finds the case moot, vacatur is appropriate because the clerk's erroneous and premature disclosure of the investor list—entirely outside the Company's control—would be the cause of the purported mootness.

First, Intervenor suggests (at 23) that the Company somehow "fail[ed] to protect itself" when it complied with the Unsealing Order rather than seek a stay after the clerk's disclosure. *Id.* (citation omitted). But as the Company's opening brief explained (at 41), it had no basis after the district court's premature and inadvertent disclosure to argue irreparable harm and therefore no basis to seek a stay. The Company therefore had no choice but to comply and appeal. Intervenor does not acknowledge let alone rebut this point. Nor does he offer any suggestion on how else the Company could have sought to protect itself.

Second, Intervenor claims (at 23) that vacatur is against the "public interest." But this Court's precedent is clear that "mootness by happenstance"—the situation here, should the Court find the appeal moot—"provides sufficient reason to vacate." *Donovan v. Vance*, 70 F.4th 1167, 1173 (9th Cir. 2023) (citation omitted). A generalized interest in "preserving judicial precedent," which is all that Intervenor presents, is not enough to overcome a party's showing that any mootness was beyond the party's control. *See NASD Disp.*, 488 F.3d at 1068.

Because any mootness here would not be attributable to the Company's actions, it is entitled to vacatur of the district court's decision at a minimum.

## CONCLUSION

For these reasons, the Court should (1) reverse the district court's June 3, 2023 order requiring the Company to file a supplemental corporate disclosure statement,

and (2) reverse the district court's August 20, 2024 order granting Intervenor's motion to unseal the supplemental corporate disclosure statement. Alternatively, the Court should vacate the district court's August 20, 2024 order under the *Munsingwear* doctrine.

Dated: January 24, 2024

Respectfully submitted,

s/ Michael E. Kenneally

MICHAEL E. KENNEALLY
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
T. 202.739.3000

ERIC MECKLEY
BRIAN D. BERRY
MORGAN, LEWIS & BOCKIUS LLP
One Market Street
Spear Street Tower
San Francisco, California
T. 415.442.1000

*Counsel for Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-5936

I am the attorney or self-represented party.

**This brief contains 6,960 words,** including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Michael E. Kenneally      **Date** January 24, 2024